**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ADSCEND MEDIA LLC, <br><br> Plaintiff, <br><br> v. <br><br> DOGOOD MEDIA LLC and ERIC FARRELL, <br><br> Defendants. | **COMPLAINT** <br><br> **Jury Trial Demanded** |

Plaintiff, Adscend Media LLC ("Adscend"), by and through its attorneys, Tarter Krinsky & Drogin LLP, for its Complaint against defendants DoGood Media LLC ("DoGood") and Eric Farrell alleges as follows:

**NATURE OF THE ACTION**

1. This action is for defamation *per se*, trade libel, tortious interference with prospective business relations and unfair competition under the Connecticut Unfair Trade Practices Act arising from the DoGood's and Farrell's (individually and collectively, "Defendants") creation and distribution of a video and emails which contained false statements that Adscend engages in advertising fraud. All of this was done with the intent of damaging Adscend and its business.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this case is between citizens of different states and the amount in controversy exceeds $75,000.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and

(2). Defendants reside within this judicial district and, upon information and belief, committed the acts complained of herein within this judicial district.

## PARTIES

4. Adscend is a limited liability company formed under the laws of the State of Delaware with a principal place of business in Austin, Texas. All of Adscend's members are domiciled in Texas.

5. Upon information and belief, DoGood is a limited liability company formed under the laws of the State of Connecticut with places of business at 40 Richards Avenue, Norwalk, Connecticut and in Chicago, Illinois. Upon information and belief, none of the members of DoGood are domiciled in Texas.

6. Upon information and belief, Farrell resides in Stamford, Connecticut and works at DoGood in Norwalk, Connecticut.

7. Upon information and belief, at all relevant times, Farrell acted at the instruction and with the prior knowledge of DoGood and acted on behalf of DoGood with DoGood's prior authorization.

## ADSCEND AND ITS BUSINESS

8. Adscend is an Internet marketing company which provides a platform that enables Internet advertisers to use Adscend's proprietary technology to serve innovative advertising programs to Internet users.

9. Adscend operates in a marketing space known as "rewarded advertising," which is a form of advertising in which an Internet user receives a reward for viewing an ad. All of Adscend's advertising solutions use this approach. These solutions allow Internet users to watch licensed video content along with an advertisement placed by a particular advertiser and earn a small reward for watching the content.

10. Adscend works with tens of thousands of companies that drive Internet traffic to Adscend's websites (these companies are known as publishers) where the advertisements and licensed video content are shown for the companies whose goods and services are being promoted by Adscend (these companies are known as advertisers).

11. Companies like Adscend are attractive to advertisers because they have relationships with tens of thousands of publishers, giving the advertiser a much larger reach than it would ordinarily have on its own.

12. Advertisers that desire to use Adscend's platform to promote their goods and services on the Internet purchase advertising space on Adscend's owned and operated video properties.

13. Typically, Adscend works with advertising partners known as supply side platforms ("SSP") which make a large number of video advertisements from a variety of advertisers available for placement by companies like Adscend.

14. Advertisers, through SSPs, pay Adscend for its services based on the numbers of Internet users who watch their advertisements on Adscend's video platform during a defined period of time. In turn, Adscend pays each of its publishers who drove traffic to a particular advertisement a portion of the revenue that it receives from the advertiser responsible for the advertisement.

15. Among the SSPs that Adscend does business with are OATH, SpotX and Telaria.

16. Adscend's platform is optimized to be viewed on larger video screens such as those used with desktop and laptop computers. That is because Adscend's research shows that approximately 95% of the views of videos hosted by Adscend are watched on larger screens.

17. Nevertheless, videos hosted by Adscend can be viewed on mobile devices. The third-party video player technology used by Adscend automatically adjusts the videos so that they can fit on the smaller screens of mobile devices. Adscend recently learned, *i.e.,* within the past two weeks, that this is accomplished by the third-party video player lowering the resolution of the video. This adjustment is not noticeable to the human eye. None of Adscend's advertising partners have ever complained about this issue.

18. Adscend's video platform services have been extremely successful, generating hundreds of millions of views and millions of dollars in revenue for Adscend.

19. Adscend is known in the industry to take strong and active measures to ensure that its platform is not used to engage in advertising fraud. Among other things, Adscend uses both technological and human measures to weed out questionable affiliate applications, blocking all known virtual private networks (VPNs), proxies, and bots, utilizes multiple industry-leading anti-fraud verification/pre-bid solutions to ensure there are no gaps in its detection processes and, when it discovers improper conduct, takes prompt action to stop it.

20. Because of its strong anti-fraud measures, Adscend is known to be a reputable, honest company that provides high quality service to its advertisers and publishers.

21. Adscend is a very successful business, with close to 40,000 active publishers and relationships with SSPs that represent some the most famous companies in the world. On information and belief, and based on the events set forth below, Adscend's success is due, in part, to its reputation of operating a "clean" business.

22. In early December 2017, as a result of an inadvertent programing error made when one of Adscend's employees was updating Adscend's platform, persons using mobile devices to view advertisements placed on one of Adscend's three video platforms, LootUp.tv,

were shown the advertisement multiple times and not shown the licensed video content that was supposed to follow the advertisement. Notably, Adscend's two other video platforms, EngageMe.tv and Stak.tv, were not affected by the error. The advertisements and licensed content played as intended on those platforms.

23. Adscend discovered the programming error on December 12, 2017 and immediately fixed it. After this fix, Adscend's video platform worked as intended: viewers were shown an advertiser's advertisement once and then shown the licensed video.

24. To the best of Adscend's knowledge, the "bug" caused by the programming error was a one-time occurrence.

## DEFENDANTS' WRONGFUL CONDUCT

25. Upon information and belief, DoGood is an Internet marketing company which has been and continues to be a direct competitor of Adscend.

26. Upon information and belief, DoGood, among other things, makes its advertiser's video advertisements available for placement by publishers and receives a commission when the videos are watched by Internet users.

27. According to Farrell's LinkedIn page, Farrell has been an account manager for DoGood since October 2016.

28. In or about December 2017 or January 2018, Defendants created a video entitled, "A look at Adscend Media's Deceptive Ad Monetization System" (the "Video").

29. Defendants, in the Video, made the following false and defamatory statements

   a. "Continuous video ads with no content;"

   b. "Who did it? … Adscend Media"

   c. "Who is advanced enough to pull this off? Adscend Media"

30. In addition, Defendants state in the Video that Adscend engages in "hack[s]" and

5

"trick[s]" and "cheat[s] the system" in order to defraud advertisers.

31.     Even though Adscend corrected the programming bug regarding repeating advertisements on December 12, 2017, Defendants uploaded the Video to YouTube on January 8, 2018.  The Video, which can be found at https://www.youtube.com/watch?v=5cgxDsKrqyA, creates the false and misleading impression that the bug was: (1) an intentional act by Adscend; and (2) an ongoing issue.

32.     In addition, beginning on or about January 8 or 9, 2018, Defendants, upon information and belief, began distributing the Video to Adscend's advertising partners, including, without limitation, OATH, SpotX and Telaria, and to companies that specialize in detecting Internet fraud, including, without limitation, White Ops.  Upon information and belief, Defendants also sent the Video to advertisers whose advertisements are shown on Adscend's platform.

33.     Upon information and belief, Defendants used malicious, surreptitious and underhanded means to distribute the Video.

34.     Specifically, Adscend has been informed that the Video was sent via email purportedly by Jacob Greenstein, Director of Strategic Accounts, Schaumburg Marketing Agency, 1475 Woodfield Road, Unit 105, Schaumburg, Illinois 60173 with an email address of jgreenstein@schaumburgmarketing.com (the "Emails").

35.     Upon information and belief, Schaumburg Marketing Agency does not exist and Jacob Greenstein, the supposed Director of Strategic Accounts of that company, is a fictitious person.  For example, Adscend has been informed that there is entity known as Schaumburg Marketing Agency located at 1475 Woodfield Road, Schaumburg, Illinois.

36.     Adscend has been informed that in the Emails, "Mr. Greenstein" claimed to be a

disgruntled advertiser.

37.     Upon information and belief, Defendants created, sent and otherwise were responsible for the creation and distribution of the Emails.

### ADSCEND IS INJURED BY DEFENDANTS' ILLEGAL CONDUCT

38.     On January 9th, 2018, SpotX informed Adscend that all of Adscend's websites and applications were being blacklisted in response to the information contained in the Video. SpotX's blacklist remains in place, meaning that Adscend can no longer run advertisement made available through SpotX's supply side platform.  Until January 9, 2018, SpotX was a significant source of revenue for Adscend.

39.     On January 18, 2018, Adscend learned that the ad verification service WhiteOps had placed on its blacklist the three primary domain names on which Adscend provides its video platform.  OATH uses WhiteOps as part of its fraud detection programs.

40.     Because Adscend was placed on WhiteOp's blacklist, it has been unable to generate any revenue through OATH, as all of Adscend's domains have been blocked.  Until January 18, 2018, OATH was a significant source of revenue for Adscend.

### FIRST CAUSE OF ACTION

### (Defamation *Per Se*)

41.     Adscend repeats and re-alleges the allegations of Paragraphs 1-40 as if fully set forth herein.

42.     On or about January 8, 2018, Defendants posted the Video on YouTube and on or about January 8 or 9, they began distributing the Video to Adscend's SSPs such as OATH, SpotX and Telaria, and to Internet monitoring companies that specialize in detecting Internet fraud, including White Ops.  Upon information and belief, Defendants also sent the Video to other advertisers whose advertisements are shown on Adscend's platform.

43. The Video falsely and maliciously made the following untrue statements:

   a. "Continuous video ads with no content;"

   b. "

   c. "Who did it? … Adscend Media"

   d. "Who is advanced to pull this off? Adscend Media"

44. In addition, Defendants state in the Video that Adscend engages in "hack[s]" and "trick[s]" and "cheat[s] the system" in order to defraud advertisers.

45. At all relevant times, Defendants knew that the allegations in the Video regarding Adscend's fraudulent and unethical conduct were false and that the false and misleading impressions caused by these statements were false.

46. At the time Defendants uploaded the Video to YouTube and forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers, Defendants knew that the foregoing statements were false and that the false and misleading impressions caused by these statements were false.

47. On information and belief, prior to uploading the Video to YouTube and distributing the Video to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers, Defendants acted with reckless disregard by failing to conduct an investigation in order to determine whether the statements made in the Video were true.

48. Defendants uploaded the Video to YouTube and forwarded it to Adscend's SSP's, advertising monitoring entities and Adscend's advertisers with malice and with the intent to harm Adscend, including damaging its reputation.

49. Defendants uploaded the Video to YouTube and forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers with malice and with the intent

to harm Adscend in the conduct of its business.

50. As a direct and proximate cause of Defendants' conduct set forth herein, Adscend has been damaged. The conduct alleged herein was willful, malicious, fraudulent, and done with the intent to harm Adscend such that punitive and/or exemplary damages should be awarded.

51. Defendants' conduct, unless and until enjoined and restrained by this Court, has caused and will continue to cause irreparable injury to its business as described above. Adscend has no adequate remedy at law for this injury.

## SECOND CAUSE OF ACTION
### (Defamation)

52. Adscend repeats and re-alleges the allegations of Paragraphs 1-51 as if fully set forth herein.

53. On or about January 8, 2018, Defendants posted the Video on YouTube and on or about January 8 or 9, began distributing the Video to Adscend's SSPs such as OATH, SpotX and Telaria, and to companies that specialize in detecting Internet fraud, including White Ops and MediaIQ. Upon information and belief, Defendants also sent the Video to other advertisers whose advertisements are shown on Adscend's platform.

54. The Video falsely and maliciously made the following untrue statements:

    a. "Continuous video ads with no content;"

    b. "Who did it? … Adscend Media"

55. In addition, Defendants state in the Video that Adscend engages in "hack[s]" and "trick[s]" and "cheat[s] the system" in order to defraud advertisers.

56. At all relevant times, Defendants knew that the allegations in the Video regarding Adscend's fraudulent and unethical conduct were false and that the false and

9

misleading impressions caused by these statements were false.

57. At the time Defendants uploaded the Video to YouTube and forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers, Defendants knew that the foregoing statements were false and that the false and misleading impressions caused by these statements were false.

58. On information and belief, prior to uploading the Video to YouTube and distributing the Video to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers, Defendants acted with reckless disregard by failing to conduct an investigation in order to determine whether the statements made in the Video were true.

59. Defendants uploaded the Video to YouTube and forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers with malice and with the intent to harm Adscend, including damaging its reputation.

60. Defendants uploaded the Video to YouTube and forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers with malice and with the intent to harm Adscend in the conduct of its business.

61. As a direct and proximate cause of Defendants' conduct set forth herein, Adscend has been damaged. Among other things, its business relationship with SpotX has been destroyed and its domain names have been blacklisted by WhiteOps, resulting in a cut-off in revenue from advertising placed through OATH.

62. As a direct and proximate cause of Defendants' conduct set forth herein, Adscend will no longer receive revenue from SpotX or OATH.

63. As a direct and proximate cause of Defendants' conduct set forth herein, Adscend has been damaged in an amount to be determined at trial but believed to be at least

$3,500,000.

64. The conduct alleged herein was willful, malicious, fraudulent, and done with the intent to harm Adscend such that punitive and/or exemplary damages should be awarded.

65. Defendants' conduct, unless and until enjoined and restrained by this Court, has caused and will continue to cause irreparable injury to its business as described above. Adscend has no adequate remedy at law for this injury.

## THIRD CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage)

66. Adscend repeats and realleges the allegations of paragraphs 1 through 65 as fully set forth herein.

67. Until January 9, 2018, Adscend had existing business relationships with SpotX and OATH whereby those SSPs regularly placed advertising on Adscend's video platform. Adscend had a reasonable expectation of continued future business relationships with the aforementioned SSPs.

68. At all relevant times, Defendants knew of each and every one of these relationships.

69. Upon information and belief, at all relevant times, Defendants knew that Adscend's SSPs would cease to do business with Adscend if it was engaging in fraudulent or unethical conduct.

70. Upon information and belief, at all relevant times, Defendants knew that fraud detection services such as WhiteOps would blacklist Adscend's domain names if WhiteOps was informed that Adscend was engaging in fraudulent or unethical conduct and that Adscend could not do business with SSPs such as OATH in the event that Adscend's domain names were blacklisted.

71. Defendants, with the intent of disrupting the relationships between Adscend and SpotX and OATH, uploaded the Video to YouTube and forwarded the Video to SpotX, OATH and WhiteOps knowing that the Video contained false and defamatory statements that branded Adscend as an entity which engages in fraudulent and unethical conduct, all of which are independently wrongful and separately actionable under Connecticut law.

72. As a result of Defendants' wrongful conduct hereinabove alleged, Adscend's relationship with SpotX has been destroyed and its relationship with OATH has been severely disrupted, if not destroyed.

73. By reason of such destruction and disruption, Adscend no longer receives any revenue from either SpotX or OATH. Based on historical patterns, Adscend expected to receive at least $3,500,000 from SpotX and OATH in 2018 alone. As a direct and proximate result of Defendants' conduct, none of that revenue will be received by Adscend.

74. As a direct and proximate cause of Defendants' conduct set forth herein, Adscend has been damaged in an amount to be determined at trial but believed to be at least $3,500,000.

75. The conduct alleged herein was willful, malicious, fraudulent, and done with the intent to harm Adscend such that punitive and/or exemplary damages should be awarded.

76. Defendants' conduct, unless and until enjoined and restrained by this Court, has caused and will continue to cause irreparable injury to its business as described above. Adscend has no adequate remedy at law for this injury.

## FOURTH CAUSE OF ACTION

### (Unfair Trade Practices under Conn. Gen. Stat. § 42-110b)

77. Adscend repeats and realleges the allegations of paragraphs 1 through 76 as fully set forth herein.

78. At all relevant times, Adscend and DoGood have been and continue to be direct competitors.

79. As hereinabove alleged, Defendants, with the intent to injure Adscend, distributed defamatory statements concerning Adscend's business practices by uploading the Video to YouTube and by forwarding the Video to Adscend's SSPs, Internet monitors and Adscend's advertisers.

80. Defendants' conduct as hereinabove alleged, was and continues to be unlawful under the common law of the State of Connecticut.

81. By distributing the Emails under the name of, upon information and belief, a fictitious individual and entity, Defendants engaged in immoral, unethical, unfair and oppressive conduct.

82. By uploading the Video, which contained false statements about Adscend and created false and misleading impressions about Adscend, to YouTube and by forwarding the Video to Adscend's SSPs, Internet monitors and Adscend's advertisers, Defendants engaged in immoral, unethical, unfair and oppressive conduct.

83. As a direct and proximate cause of Defendants' unfair trade practices, Adscend's business relationship with SpotX has been destroyed and Adscend's relationship with OATH has been severely disrupted or destroyed.

84. As a direct and proximate cause of Defendants' unfair trade practices, Adscend has been damaged in an amount to be determined at trial but believed to be at least $3,500,000.

13

85.     The conduct alleged herein was willful, malicious, fraudulent, and done with the intent to harm Adscend such that punitive and/or exemplary damages should be awarded and its costs and reasonable attorney's fees pursuant to Conn. Gen. Stat. § 42-110b(a) and (d).

## PRAYER FOR RELIEF

**WHEREFORE,** Adscend requests that the Court enter judgment in favor of Adscend and against Defendants, granting the following relief:

a.  Preliminarily and permanently enjoining Defendants, their agents, employees and anyone acting in concert with them, from further distribution, posting or uploading of the Video, or making, without factual basis, communications substantially similar thereto to SSPs, Internet monitors or advertisers;

b.  Requiring Defendants to remove the Video from YouTube;

c.  Requiring Defendants to send written communications to each and every business and person to whom they forwarded the Video, retracting the statements made therein;

d.  Awarding Adscend compensatory damages in a sum to be determined at trial but not less than $3,500,000, together with any applicable prejudgment and post judgment interest;

e.  Awarding Adscend punitive damages, in an amount to be determined at trial;

f.  Awarding Adscend its costs and reasonable attorney's fees; and

g.  Awarding Adscend such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Adscend hereby demands a trial by jury.

Dated:   January 24, 2018

Respectfully submitted,

**TARTER KRINSKY & DROGIN LLP**

By:  */s/ Mark J. Rosenberg*
       Mark J. Rosenberg
       Joel H. Rosner

1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
Mrosenberg@tarterkrinsky.com

*Attorneys for Adscend Media LLC*