**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

|  |  |
|---|---|
| ADSCEND MEDIA LLC,<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>DOGOOD MEDIA LLC and<br>ERIC FARRELL,<br><br>　　　　　Defendants. | Case No. 3:18-cv-00141-MPS<br><br><br>March 23, 2018 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel:　(702) 420-2001
Fax:　(305) 437-7662
jmw@randazza.com

Richard B. Newman, *pro hac vice*
Hinch Newman LLP
40 Wall Street, 35th Floor
New York, NY 10005
Tel:　(212) 756-8777
Fax:　(866) 449-4897
rnewman@hinchnewman.com

*Attorneys for Defendants*

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM ........................................... 1

1.0  FACTUAL BACKGROUND ........................................................................................ 1

    1.1  General Overview ........................................................................................ 1

    1.2  The Video Shows Adscend Scammed Advertisers ........................................ 2

    1.3  Adscend's Scam is Revealed ........................................................................ 5

2.0  LEGAL STANDARD .................................................................................................. 6

3.0  ARGUMENT ............................................................................................................ 6

    3.1  Adscend Has Failed to Adequately Identify Which Defendant Allegedly Caused Its Injury ........................................................................................ 6

    3.2  Defendants' Alleged Statements were Not Plausibly False and are Not Actionable Defamation ........................................................................................ 9

        3.2.1  The Alleged Statements are Not Plausibly False .................................... 10

        3.2.2  Defendants did Not Engage in Defamation by Implication ...................... 12

        3.2.3  Plaintiff Failed to Plausibly Allege Actual Malice ................................. 12

        3.2.4  Plaintiffs Fail to Plausibly Allege Causation ........................................ 14

    3.3  Defendants Did Not Plausibly Engage in the Alleged Unlawful Intentional Interference ........................................................................................ 15

    3.4  No Unfair Trade Practices Claim is Cognizable ........................................ 16

4.0  CONCLUSION ........................................................................................................ 18

## TABLE OF AUTHORITIES

**CASES**

*Adams v. I-Flow Corp.*, Case No. CV09-09550 R (SSx),
   2010 U.S. Dist. LEXIS 33066 (CD. Cal. Mar. 30, 2010) ........................................ 8

*Arista Records Ltd. Liab. Co. v. Doe*,
   604 F.3d 110 (2d Cir. 2010) .................................................................................. 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................. 6, 7, 8, 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................... *passim*

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
   151 F. Supp. 3d 287 (E.D.N.Y. 2015) ................................................................. 11

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) .......................................................................... 13, 14

*Blake v. Levy*,
   191 Conn. 257, 464 A.2d 52 (1983) ..................................................................... 15

*Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*,
   691 F. App'x 515 (10th Cir. 2017) ......................................................................... 7

*Chambers v. Time Warner*,
   282 F.3d 147 (2d Cir. 2002) .................................................................................. 2

*Combs v. Stryker Corp.*, No. 2:09-cv-02018-JAM-GGH,
   2009 U.S. Dist. LEXIS 115920, 2009 WL 4929110 (E.D. Cal. Dec. 14, 2009).................... 8, 9

*Comput. Assocs. Int'l v. Altai*,
   982 F.2d 693 (2d Cir. 1992) .................................................................................. 11

*Contemporary Mission v. N.Y. Times Co.*,
   842 F.2d 612 (2d Cir. 1988) .................................................................................. 13

*Daddona v. Liberty Mobile Home Sales, Inc.*,
   209 Conn 243, 550 A.2d 1061 (1988) ................................................................... 16

*Deer Consumer Prods., Inc. v. Little Grp.*,
   2012 NY Slip Op 52157(U), 37 Misc. 3d 1224(A) (Sup. Ct.) ................................ 16

*Devone v. Finley*, No. 3:13-CV-00377 (CSH),
   2014 U.S. Dist. LEXIS 36356 (D. Conn. Mar. 20, 2014)...................................... 10

*Dittman v. DJO, LLC*, No. 08-cv-02791-WDM-KLM,
2009 U.S. Dist. LEXIS 97106 (D. Colo. Oct. 5, 2009) ..................................... 7, 8, 9

*Dong v. Board of Trustees of Leland Stanford University*,
191 Cal. App. 3d 1572, 236 Cal. Rptr. 912 (1987) ................... 11

*Downes Patterson Corp. v. First Nat'l Supermarkets, Inc.*,
64 Conn. App. 417, 780 A.2d 967 (2001) ............................ 15

*Eder Bros. v. Wine Merchants. Of Conn., Inc.*
275 Conn. 363 (Conn. 2005) ...................................... 16

*Estate of Gomez v. Larson*, CV 980084646,
1999 Conn. Super. LEXIS 1535 (Super. Ct. June 8, 1999) .................... 12

*Facebook, Inc. v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*,
Case No. 5:12-cv-00414 (N.D. Cal filed Jan. 26, 2012) .......................... 4

*Friedman v. Boston Broadcasters, Inc.*,
402 Mass. 376, 522 N.E.2d 959 (1988) ................................. 11

*Gambardella v. Apple Health Care, Inc.*,
291 Conn. 620, 969 A.2d 736 (Conn. 2009) .......................... 10

*Garrison v. Louisiana*,
379 U.S. 64 (1964) ............................................. 13

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ......................................... 13, 14

*Gilmore v. DJO, Inc.*,
663 F. Supp. 2d 856, 2009 U.S. Dist. LEXIS 96690 (D. Ariz. 2009)...................... 8

*Goodrich v. Waterbury Republican-American, Inc.*,
188 Conn. 107, 448 A.2d 1317 (1982) ................................ 11

*Greenbelt Cooperative Publishing Association v. Bresler*,
398 U.S. 6 (1970) ............................................. 13

*Harasz v. Katz*,
239 F. Supp. 3d 461 (D. Conn. 2017) ................................ 14

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*,
296 Conn. 315, 994 A.2d 153 (2010)................................. 17

*Haskins v. Zimmer Holdings, Inc.*, No. 1:09-CV-236,
2010 U.S. Dist. LEXIS 7690, 2010 WL 342.552 (D. Vt. Jan. 29, 2010)................... 8

*Hotchner v. Castillo-Puche,*
   551 F.2d 910 (2d Cir. 1977) .................................................................. 11

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.,*
   596 F.Supp.2d 497 (D. Conn. 2009) ..................................................... 10

*Keaton v. State Dep't of Rehab. Servs.,* No. 3:16-CV-1810 (MPS),
   2018 U.S. Dist. LEXIS 38597 (D. Conn. Mar. 9, 2018) .......................... 2

*Keiler v. Harlequin Enters.,*
   751 F.3d 64 (2d Cir. 2014) .................................................................... 14

*Kester v. Zimmer Holdings, Inc.,* No. 2:10-cv-00523,
   2010 U.S. Dist. LEXIS 59869 (W.D. Pa. June 16, 2010) ......................... 7

*Landmark Inv. Grp., LLC v. Calco Constr. & Dev. Co.,*
   141 Conn. App. 40, 60 A.3d 983 (2013) ............................................... 15

*Landmark Inv. Grp., LLC v. Calco Constr. & Dev. Co.,* No. CV096002117,
   2013 Conn. Super. LEXIS 2374 (Super. Ct. Oct. 11, 2013) ................... 15

*Lerman v. Flynt Distrib. Co.,*
   745 F.2d 123 (2d Cir. 1984) .................................................................. 13

*Lightfoot v. Union Carbide Corp.,*
   110 F.3d 898 (2d Cir. 1997) .................................................................. 14

*McIntyre v. Ohio Elections Com'n,*
   514 U.S. 334 (1995) .............................................................................. 17

*N. Am. Energy Sys., LLC v. New Eng. Energy Mgmt.,*
   269 F. Supp. 2d 12 (D. Conn. 2002) ..................................................... 15

*Peterson v. Breg, Inc.,* 2:09-cv-2044 JWS,
   2010 U.S. Dist. LEXIS 48985 (D. Ariz. April 28, 2010) .......................... 8

*Scott v. Town of Monroe,*
   306 F. Supp. 2d 191 (D. Conn. 2004) ..................................................... 6

*Sherman v. Stryker Corp.,* No SAVC 09-224 JVS (ANx),
   2009 U.S. Dist. LEXIS 34105 (CD. Cal. March 30, 2009) ................... 7, 8

*Simms v. Seaman,*
   308 Conn. 523, 69 A.3d 880 (Conn. 2013) ........................................... 10

*Skakel v. Grace,*
   2014 U.S. Dist. LEXIS 30124, 2014 WL 902675 (D.Conn. March 7, 2014) .................... 10, 13

*Strada v. Connecticut Newspapers, Inc.*,
     193 Conn. 313, 477 A.2d 1005 (1984) ................................................................................. 12

*Taylor v. Meirick*,
     712 F.2d 1112 (7th Cir. 1983) .......................................................................................... 14

*Timmons v. Linvatec Corp.*,
     263 F.R.D. 582, 2010 U.S. Dist. LEXIS 14057 (C.D. Cal. 2010) ............................................ 8

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
     517 F.3d 104 (2d Cir. 2008) .............................................................................................. 6

*Washington v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*,
     Case No. 2:12-cv-00129 (W.D. Wash. filed Jan. 26, 2012) ...................................................... 4

*Wellington Systems, Inc. v. Redding Group, Inc.*,
     49 Conn.App. 152, 714 A.2d 21, cert denied 247 Conn. 905, 720 A.2d 516 (1998) ............... 15

*Woodcock v. Journal Publishing Co., Inc.*,
     230 Conn. 525, 646 A.2d 92 (Conn. 1994) ......................................................................... 10


## RULES

Fed. R. Civ. P. 10 ........................................................................................................................ 2

Fed. R. Civ. P. 12 ................................................................................................................ 1, 2, 6

Fed. R. Civ. P. 8 ...................................................................................................................... 14


## STATUTES

15 U.S.C. § 7704 ........................................................................................................................ 4

Conn.Gen.Stat. sec. 42-11-a ...................................................................................................... 16


## OTHER AUTHORITIES

Restatement (Third) of Agency § 7.03 (2006) ............................................................................. 7

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Plaintiff, Adscend Media, LLC, ("Adscend") got caught red-handed using programming tricks to cheat the third-party advertisers using its platform. In fact, a close reading of the Amended Complaint (Dkt. No. 7) shows that Adscend does not deny its system was programmed in a manner that cheated its advertisers.

When this conduct was exposed, allegedly by Defendant DoGood Media, LLC, ("DoGood"), Adscend did the only thing it could to try to spin and shut down this exposure—file a coercive lawsuit. Defendants DoGood and Eric Farrell hereby move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**1.0     Factual Background**

**1.1     General Overview**

Adscend pays computer users who want to watch an online video if they agree to also view an ad. Amended Complaint at ¶ 9. Adscend gets paid by advertisers each time a user watches an ad. *Id*. at ¶¶ 12-14. Adscend works with middle-men companies, termed "supply side platforms" or "SSP", such as OATH, SpotX, and Telaria, to obtain the ads from the wide variety of advertisers. *Id*. at ¶¶ 13-15. Advertisers and SSPs prefer when their ads are viewed on large screens, like desktop and laptop computers, rather than on mobile devices, generating significant revenue for Adscend on account of its claims of having primarily large-screen viewers. *Id*. at ¶¶ 16-18. Adscend delivers these pay-to-view ads through at least three platforms: LootUp.tv, EngageMe.tv, and Stak.tv. *Id*. at ¶ 22.

DoGood is alleged to be a competitor to Adscend, serving as a platform to enable ads to be shown with video content. *Id*. at ¶¶ 25-26. Defendants are alleged to have created a video entitled "A Look at Adscend Media's Deceptive Ad Monetization System" in December 2017 or January 2018 (hereinafter "the video"). *Id*. at ¶ 28. The video was allegedly uploaded to YouTube on January 8, 2018, at the URL <https://www.youtube.com/watch?v=5cgxDsKrqyA>.

*Id*. at ¶ 32.[1]  The video is alleged to contain indicia that Farrell and other agents of DoGood were involved with its creation.  *Id*. at ¶ 38.  Specifically, the video shows a website address for Adscend's LoopUp.tv platform allegedly linked to those agents.  *Id*.

### 1.2    The Video Shows Adscend Scammed Advertisers

The video begins with a section labeled "#1 Continuous video ads with no content."[2]  On the left side of the video is a smartphone and a watch that shows that the events occurring were not spliced together or edited, but happened in real time.  The smartphone is connected to LoopUp.tv.  From approximately the 11 second mark to 2 minutes, 18 seconds, it shows a series of seven ads for the TJX Companies (TJ Maxx, Marshalls, HomeGoods), without any video content between the ads.[3]

Beginning at 1 minute, 26 seconds, the focus of the video shifts to the right side with a section labeled "#2 Mobile device using desktop tag."  A mobile device running the Chrome browser is connected to LootUp.tv, with details displayed on the right, using a desktop computer.  The video shows various parameters of Adscend's webpage that serves the ads as part of the code transmitted when a user views the ads.  The video depicts that Adscend, in fact, omitted using certain query parameters that would identify the user as using a mobile device, thereby fooling advertisers into thinking the users were watching them on more desirable larger screens of computers than on tiny-screen mobile devices.[4]

---

[1]    A true and correct copy of the video appears at <u>Exhibit 1</u> to this motion.

[2]    Under Fed. R. Civ. P. 10(c), the video, identified by URL in the complaint, and the materials in the video, may be considered on a motion to dismiss for failure to state a claim.  *See Keaton v. State Dep't of Rehab. Servs.*, No. 3:16-CV-1810 (MPS), 2018 U.S. Dist. LEXIS 38597, at *11 (D. Conn. Mar. 9, 2018) ("In deciding a Rule 12(b)(6) motion, courts may consider documents attached to, integral to, or incorporated by reference in the complaint.") and quoting *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.").

[3]    This demonstration of repeating ads on the left side recurs in the video beginning at 2:47.

[4]    As shown in the video, discussed below, Adscend actively courts advertisers by promoting desktop-sized traffic.  Consequently, by so deceiving SSPs, Adscend is compensated by advertisers at a higher rate.

At 1 minute, 51 seconds, the section "#3 Faking Video Player Resolution" begins. It illustrates that Adscend's code misrepresented the width of the ads (854 pixels) to be desktop-sized resolution, rather than the actual mobile-sized resolution of the video player, being a maximum width of 360 pixels.[5]  At 2 minutes, 35 seconds, the video asks "How did they fake it?"  The video then shows that Adscend coded a second, buried, "meta" tag called "viewport" that ordinarily would report the true resolution size to override the honest reporting to falsely report the user was using a desktop-sized display. 2:40-3:10.   This is explained to be a "hack[ing]" of "viewport" that causes the SSP and advertiser to think it is desktop sized.  3:14.

The video then transitions to an analysis section at 3:37, first saying "What was done":

    #1  High frequency Ads with no content

    #2  Mobile Browser uses desktop tag

    #3  Hidden Secondary Viewport Masquerades Tiny Mobile Window as Desktop Sized

    #4  Very difficult to see the trick because they serve the trick only to mobile devices

At 4:01, the video asks "Who Did It?"  It answers with "lootup.tv engageme.tv stak.tv" having the "same layout, same code, overlapping content sets, similar ads."  4:09.  It displays nearly identical "ads.txt" files from each of the three sites.  4:15.

Then it displays a webpage showing EngageMe.tv is owned and operated by Adscend. 4:18.  At 4:25 it transitions to Adscend's webpage at <https://adscendmedia.com/advertisers> discussing EngageMe.tv, which promises a High Average AVOC Rate, High Average Viewability Rate, and Large Player (i.e., desktop), but notes that the scores and "large player" are "from running the player in port[r]ait mode and using the second[ar]y viewport trick."  It is called a "[h]ighly sophisticated scheme to sell small low value low resolution inventory as high value high resolution inventory."  4:30.

At 4:32, the video asks "Who is advanced enough to pull this off?", answering at 4:36 "AdscendMedia" and Fehzan Ali and Jeremy Bash.  The video transitions from 4:40 to 6:34 to

---

    [5]   The video uses Google's mobile website's honest reporting of resolution for comparison.

the Attorney General of the State of Washington announcing the filing of *Washington v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*, Case No. 2:12-cv-00129 (W.D. Wash. filed Jan. 26, 2012) for violations of the Federal CAN-SPAM Act, 15 U.S.C. § 7704 and state law, misusing Facebook to cause users to click on misleading advertising links via "clickjacking".[6]  The Washington Attorney General also announced the filing of *Facebook, Inc. v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*, Case No. 5:12-cv-00414 (N.D. Cal filed Jan. 26, 2012) (hereinafter "Facebook Complaint"), in which the same type of allegations, that Adscend, Ali, and Bash trick "users into sending deceptive commercial messages" and "lure Facebook users into participating in deceptive advertising scams" are made.  Facebook Complaint at ¶ 36.  The video then provides the following "Conclusion":

> Adscend Media are again cheating the system by selling high frequency low resolution video ads as large ads.  This is sopiscatited [sic] and subtle.  Low resolution ads are worth much less to adverisers [sic] compared to the value of "large" player ads AND there is little demand for tiny video players.  This trick is likely netting them many orders of magnitude the amount of money they would have made if they played fair.

Video at 6:34.

At 6:48 the video asks about the ad display and looping scam: "Who was affected?", answering "Adscend Media uses programatic [sic] and direct ads it is difficult to assess the extent.  It is likely that many programatic [sic] video advertising campains [sic] were exposed.  The following is a selection of campaigns that the researchers witnessed…"  Then, from 7:02-7:32 it lists thirty campaigns, including ones by BMW, Honda, Chrysler, Walt Disney, and the Utah Office of Tourism, affected by this scam.  It concludes with the recommendation that affected parties lobby for an audit and demand reimbursement.  7:32.

---

[6]   Adscend, Bash, and Ali entered into a Consent Decree requiring payment of $100,000 and enjoining them from engaging in misleading electronic advertising and messaging.  *Washington v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*, Case No. 2:12-cv-00129 (W.D. Wash. filed May 7, 2012)

### 1.3    Adscend's Scam is Revealed

Adscend admits that repeating advertisements occurred on its platform, but calls it a "programming bug" that was "corrected" on December 12, 2017.  Amended Complaint at ¶ 32.

Nowhere in the Amended Complaint does Adscend actually deny that the misrepresentation of video player size as desktop, rather than mobile, when viewed from mobile devices occurred or claim that it was a "bug."

To the contrary, Adscend admits that its ads are hard-coded, *i.e.* "optimized", for larger video screens.  *Id*. at ¶ 16.  They are then "adjust[ed]" via a "third-party video player lowering the resolution," without any alteration to Adscend's reporting to the advertisers that it was displayed on a desktop sized monitor.  *Id*. at ¶ 17.  Although Adscend claims the advertisers do not complain, they do not allege if the advertisers ever discovered the misrepresentation.  *Id*. This scam generates them "millions of dollars in revenue".  *Id*. at ¶ 18.  Adscend does not allege it alerted its advertisers of this fraud or ceased this practice.

Adscend alleges that Defendants uploaded the video to YouTube on January 8, 2018 and that they began distributing it to advertising partners, advertisers and Internet fraud detection companies that day or the day after.  *Id*. at ¶¶ 32-33.  Adscend claims Defendants used a false identity in distributing the video.  *Id*. at ¶¶ 39-43.

As a result of the video, Adscend claims that one SSP – SpotX – "blacklisted" it, preventing it from running SpotX supplied ads.  *Id*. at ¶ 44.  It also claims that a company called "WhiteOps," an ad verification service, put Adscend's three websites on a blacklist and that OATH, another SSP, uses that blacklist, thereby preventing it from running OATH supplied ads. Id. at ¶¶ 45-46. However, Adscend alleges no facts to suggest the content of the video caused such blacklisting as opposed, for example, to OATH or SpotX merely taking a look at Adscend and blacklisting it for other reasons.[7]

---

[7]    *See, e.g.,*  <https://adspecs.oath.com/pages/oathsupplypolicies/?rnd=1 - Section4> (rule against paying users).

**2.0    Legal Standard**

In considering a motion under Fed. R. Civ. P. 12(b)(6), the plaintiff has to have alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of the motion, the allegations are accepted as true. *Twombly*, *supra*, at 572.  While the Court must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims…." *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004).  Nothing in the Amended Complaint gives rise to viable claims against Defendants.

**3.0    Argument**

Plaintiff's Amended Complaint fails to adequately allege claims against the Defendants. The video fairly and accurately depicts how Adscend's website was designed, rendering the factual elements non-false and the opinion non-defamatory.  Plaintiff, a public figure, further fails to plead actual malice or a factual basis for its alleged damages.  Similarly, the intentional interference and CUTPA claims fail as a matter of law because there was no actionable defamation or other improper conduct, as well as the absence of a basis for damages. Additionally, the claims against Mr. Farrell in general do not specify how he is liable in any way. Thus, the matter must be dismissed.

### 3.1    Adscend Has Failed to Adequately Identify Which Defendant Allegedly Caused Its Injury

Throughout the Amended Complaint, Adscend lumps Defendants DoGood and Eric Farrell together, without specifically alleging who did what, and when.  "[I]t is particularly important to make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from

collective allegations." *Bristow Endeavor Healthcare, LLC v. Blue Cross & Blue Shield Ass'n*, 691 F. App'x 515, 519 (10th Cir. 2017) (internal citation and quotation marks omitted). Adscend's lumping together of the defendants fails to meet the Rule 8(a) pleading standard.

Though DoGood might be liable for the actions of Mr. Farrell if performed in the course and scope of his employment, Mr. Farrell cannot be liable as agent for the actions of the principal, DoGood.  The Restatement (Third) of Agency provides that a principal may be liable for the acts of the agent, but not vice-versa.  Restatement (Third) of Agency § 7.03 (2006); *see also* Restatement (Third) of Agency § 7.03 cmt. b (2006) (confirming that "[p]rincipals, not agents, are subject to vicarious liability.")  Thus, it was incumbent on Adscend to specifically plead the factual predicate for Mr. Farrell's alleged liability, which it failed to do, rather than lumping him in generally with DoGood.

The speculative and collective identification of the Defendants fails to adequately identify which Defendant caused Plaintiff's alleged injury.  Specifically, it fails to set forth with particularity what Mr. Farrell did to give rise to alleged liability, rather than any other agent of DoGood.  The Amended Complaint, therefore, is insufficient and speculative under *Twombly* and *Iqbal, supra*.  *See Kester v. Zimmer Holdings, Inc.*, No. 2:10-cv-00523, 2010 U.S. Dist. LEXIS 59869, at *17 (W.D. Pa. June 16, 2010) (dismissing product liability claim where "the speculative and collective identification of the Defendants fails to adequately identify which Defendant caused Plaintiff's alleged injury and the Complaint, therefore, is insufficient and speculative under *Twombly* and *Iqbal*"); *Haskins v. Zimmer Holdings, Inc*., No. 1:09-CV-236, 2010 U.S. Dist. LEXIS 7690, at *5 (D. Vt. Jan. 29, 2010) (dismissing product liability claim because the "threshold allegation" of pleading what a specific defendant did by name "is necessary to show a plausible entitlement to relief.");

A plaintiff's generic averments and formulaic recitations that do not disambiguate defendants fail under the federal pleading standard.  *See Sherman v. Stryker Corp.*, No SAVC 09-224 JVS (ANx), 2009 U.S. Dist. LEXIS 34105 (CD. Cal. March 30, 2009); *Dittman v. DJO, LLC*, No. 08-cv-02791-WDM-KLM, 2009 U.S. Dist. LEXIS 97106 (D. Colo. Oct. 5, 2009);

*Gilmore v. DJO, Inc.*, 663 F. Supp. 2d 856, 2009 U.S. Dist. LEXIS 96690 (D. Ariz. 2009). Relying on *Twombly* and *Iqbal*, district courts dismiss complaints that "conspicuously fail[] to allege" what specific conduct a defendant engaged in that caused the alleged injury." *Sherman*, 2009 U.S. Dist. LEXIS 34105, at *12; *see Dittman*, 2009 U.S. Dist. LEXIS 97106, *8-9 (noting, in the products liability context, that plaintiff's failure to sufficiently allege any of the defendants' product was used on plaintiff was a "deficiency fatal to the claim" since plaintiff "had no facts, only speculation, on which to base his claim that defendants' products caused or contributed to his injury").

Courts in this Circuit and elsewhere have repeatedly and regularly been dismissed where the complaints haphazardly lump defendants together. *See Haskins v. Zimmer Holdings, Inc.*, No. 1:09-CV-236, 2010 U.S. Dist. LEXIS 7690, 2010 WL 342.552 (D. Vt. Jan. 29, 2010); *Hendrikx v. State*, No. 2:13-cv-0087-RJS, 2013 U.S. Dist. LEXIS 155217, at *6 (D. Utah Oct. 29, 2013) (finding Rule 8(a) standard not met where "[t]he Complaint wholly fails to give the Defendants adequate notice of the misconduct each is alleged to have committed."); *Combs v. Stryker Corp.*, No. 2:09-cv-02018-JAM-GGH, 2009 U.S. Dist. LEXIS 115920, 2009 WL 4929110 (E.D. Cal. Dec. 14, 2009); *Timmons v. Linvatec Corp.*, 263 F.R.D. 582, 2010 U.S. Dist. LEXIS 14057 (C.D. Cal. 2010); *Adams v. I-Flow Corp.*, Case No. CV09-09550 R (SSx), 2010 U.S. Dist. LEXIS 33066 (CD. Cal. Mar. 30, 2010*); Peterson v. Breg, Inc.*, 2:09-cv-2044 JWS, 2010 U.S. Dist. LEXIS 48985 (D. Ariz. April 28, 2010).

Here, Mr. Farrell's name appears in but five paragraphs of the Amended Complaint. *See* Amended Complaint at ¶¶ 1, 6, 7, 27 & 38.  Ascend otherwise fails to disambiguate the allegations in which he is lumped together with DoGood as "Defendants."

Paragraph 1 generically states that this action arises from "DoGood's and Farrell's creation and distribution of a video and emails which contained false statements that Adscend engages in advertising fraud," without any allegations of fact.  *Id.* at ¶ 1.  Paragraph 6 merely identifies his residency and employment by DoGood.  *Id.* at ¶ 6.  Similarly, Paragraph 7 alleges mere agency, that "Farrell acted at the instruction and with the prior knowledge of DoGood and

acted on behalf of DoGood with DoGood's prior authorization," without any allegation as to what actual wrong he supposedly committed. *Id*. at ¶ 7. And Paragraph 27 of the Amended Complaint sets forth his job title and tenure. *Id*. at ¶ 27. This leaves Paragraph 38, which asserts that the LootUp.tv URL seen in the video "tie[s] back to accounts created and used by Farrell, [and nonparties] Shimizu and Gomes de Almeida." *Id*. at ¶ 38. There is not a single specific allegation as to Mr. Farrell's role in creating or distributing the video.

Plaintiff failed to plead specific allegations of wrongdoing as to each defendant, with the most marked absence as to Mr. Farrell. Rather, Adscend collectively pleads while merely speculating that both Defendants could be liable. *Compare Combs*, 2009 U.S. Dist. LEXIS 115920, *6-7 (dismissing claim where complaint speculated as to potential liability for particular defendant). The mere possibility that the conduct complained of *could* have been performed by both Defendants, rather than by just one of the defendants, is not adequate to state a claim under the prevailing standards as set forth by *Twombly* and *Iqbal*. *Dittman*, 2009 U.S. Dist. LEXIS 97106, *9. Thus, all claims as to Mr. Farrell must be dismissed, as they are insufficient as a matter of law.

### 3.2    Defendants' Alleged Statements were Not Plausibly False and are Not Actionable Defamation

In the First and Second Causes of Action, Plaintiff alleges the related claims of defamation and defamation per se. Under Connecticut law, in order "[t]o establish a prima facie case of defamation" a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement."[8] *Simms v. Seaman*, 308 Conn. 523, 547-48, 69

---

[8]    The essential difference between claims of defamation and defamation per se is that, "[a]s to the final prong of the prima facie case of defamation, that of injury to reputation, when a plaintiff claims defamation per se, she need not prove damages." *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 850, 863 A.2d 735, 741 (2005).

A.3d 880 (Conn. 2013) (quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28, 969 A.2d 736 (Conn. 2009)).

For a statement to be defamatory, it must be false. *Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, at *24 (D. Conn. Mar. 20, 2014). Moreover, a "defendant will not be held liable as long as the statements at issue are substantially true." *Woodcock v. Journal Publishing Co., Inc.*, 230 Conn. 525, 554, 646 A.2d 92 (Conn. 1994). Thus, "[w]here the main charge, or gist, of the [defamation] is true, minor errors that do not change a reader's perception of the statement do not make the statement actionable." *Skakel v. Grace*, 2014 U.S. Dist. LEXIS 30124, 2014 WL 902675 at *4-5 (D.Conn. March 7, 2014) (internal quotation marks and citations omitted). These claims cannot survive as the Amended Complaint itself, in consideration of the video, demonstrates a lack of falsity.

### 3.2.1   The Alleged Statements are Not Plausibly False

Plaintiff makes minimal allegations as to what it deems to have been defamatory. The only allegedly false statements claimed are:

- "Adscend Media's Deceptive Ad Monetization System"
- "Continuous video ads with no content"
- "Who did it? … Adscend Media"
- "Who is advanced to pull this off?  Adscend Media"; and
- Adscend engages in "hack[s]", "trick[s]", and "cheat[s] the system" to defraud advertisers.

Amended Complaint at ¶¶ 29, 30, 49, 50, 60 & 61.  These statements are all either substantially true or non-factual statements.  "For a statement to be defamatory, it must be one of fact, rather than one of opinion." *Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, at *24 (D. Conn. Mar. 20, 2014); *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F.Supp.2d 497, 503 (D. Conn. 2009) (under Connecticut common law, "a defamation claim requires a statement that is an assertion of fact, either explicit or implied, and not merely an opinion).  "A statement can be defined as factual if it relates to an event or state of affairs that

existed in the past or present and is capable of being known…. An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact." *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 111, 448 A.2d 1317 (1982) (internal citations and quotation marks omitted). Generally, "expressions of 'pure' opinion (those based upon known or disclosed facts) are guaranteed virtually complete constitutional protection." *Id*. at 118. Put simply, "[a]n assertion that cannot be proved false cannot be held libellous." *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977).

As to calling Adscend "deceptive" and using "hacks", "tricks", and "cheats", such are protected statements of opinion incapable of being proven false, just as calling something "fraudulent" is protected opinion. Not infrequently, "courts have found that use of the word 'fraud' can be offered as a statement of opinion rather than as a factual declaration." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 294 (E.D.N.Y. 2015) (collecting cases); *see also Friedman v. Boston Broadcasters, Inc.*, 402 Mass. 376, 379-80, 522 N.E.2d 959 (1988) (characterizing plaintiffs as "insurance crooks," who engaged in "insurance fraud" constitutes a statement of opinion and not fact); *Dong v. Board of Trustees of Leland Stanford University*, 191 Cal. App. 3d 1572, 1585-1586, 236 Cal. Rptr. 912 (1987) (letter stating that plaintiff had engaged in "public fraud" was a statement of opinion based on disclosed facts).

The video disclosed the facts on which Defendants allegedly provided their opinions. The video shows Adscend had repetitive looping ads and code that falsely represented the ads as playing on desktop-sized, not mobile, systems. Computer code is not accidental; it is a creative, literary work protected by copyright. *Comput. Assocs. Int'l v. Altai*, 982 F.2d 693, 702-03 (2d Cir. 1992). Adscend does not dispute these: the looping is called a "bug", but the misrepresentation of the ad size is not called a bug. It is Adscend's code and it was permissible for Defendants to allegedly transmit the opinion that such code – and the purveyors of that code – were deceptive, that it was a hack, that it is a trick, and that it cheats advertisers. Thus, no defamation claim can be maintained as to those allegations.

- 11 -

Similarly, the ads were continuous, Adscend engaged in the deceptive conduct, and, by extension, Adscend is sufficiently advanced to have done so.  Thus, as to the statements of fact, the allegations in the Amended Complaint and the video demonstrate they are cannot be false.

### 3.2.2    Defendants did Not Engage in Defamation by Implication

Plaintiff also wrongly claims actionable defamation based on alleged false and misleading impressions.  Amended Complaint at ¶¶ 51, 52, 62, & 63. Connecticut has not recognized defamation by implication.  *See Strada v. Connecticut Newspapers, Inc.*, 193 Conn. 313, 326, 477 A.2d 1005 (1984).

Statements "may create defamation by innuendo when a defendant omits crucial details or fails to 'present the whole picture.'  In order for a statement to create defamation by innuendo there must exist undisclosed facts that, if disclosed, would substantively alter the tone of the statement."  *Estate of Gomez v. Larson*, CV 980084646, 1999 Conn. Super. LEXIS 1535, at *16-17 (Super. Ct. June 8, 1999) quoting *Strada*, supra, at 322.

However, there is no allegation of undisclosed facts.  Though Plaintiff asserts that the looping was corrected prior to the publication of the video, such is not a crucial detail—the looping did occur and the video was properly published.  A reporter writing about a bank robber's exploits need not keep monitoring him to see if he is still robbing banks.  If Adscend wishes to publicize it is no longer using code to improperly obtain revenue, and remit the revenue it improperly obtained, it is free to engage the marketplace of ideas and share that information.  But there was no omission of undisclosed facts in the video that would have shown Adscend's gains were not ill-gotten so as to substantively alter the tone.

### 3.2.3    Plaintiff Failed to Plausibly Allege Actual Malice

Adscend is a public figure.  "The characterization of a plaintiff as a public figure may rest on two bases: "'[i]n some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.  More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby

becomes a public figure for a limited range of issues.'" *Skakel v. Grace*, 5 F. Supp. 3d 199, 210 (D. Conn. 2014) quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

Adscend is a limited purpose public figure.  To be deemed a limited purpose public figure, a plaintiff must have: "(1) successfully invited public attention to [its] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [itself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." *Lerman v. Flynt Distrib. Co*., 745 F.2d 123, 136-37 (2d Cir. 1984).  As to the first two prongs, it invited attention and voluntarily injected itself into the controversy by marketing itself to SSPs and advertisers, making claims about the views and desktop-sized resolution views of its users.  As to the third prong, by its own admission, Plaintiff works with "tens of thousands" of companies, with a platform that generates "hundreds of millions of views" and is "known in the industry"; it claims to be "successful," "with close to 40,000 active publishers," and involve "some of the most famous companies in the world."  Amended Complaint at ¶¶ 10 & 18-21.  The Second Circuit has previously deemed a corporate entity a limited purpose public figure where, like Adscend, it solicited millions of views and found itself under governmental scrutiny.  *See Contemporary Mission v. N.Y. Times Co*., 842 F.2d 612, 620 (2d Cir. 1988).  And Adscend has access to the media as it is, itself, a media entity.  Thus, it is a limited purpose, if not a general purpose, public figure.

Plaintiff did not plausibly allege actual malice necessary under the First Amendment. "Limited-purpose public figures who seek damages for defamatory statements must show that the statements were made with 'actual malice'—that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015).  "Actual malice" in the context of the First Amendment does not include "spite, hostility or intention to harm." *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 10 (1970); *see also Garrison v. Louisiana*, 379 U.S. 64, 78-79 (1964) (reckless disregard not established by a finding of "ill-will, enmity, or a wanton desire to injure.").  Actual malice

must be plausibly alleged under Fed. R. Civ. P. 8.  *Harasz v. Katz*, 239 F. Supp. 3d 461, 482-83 (D. Conn. 2017) citing *Biro, supra*.  Adscend generically asserts Defendants acted with "malice," in the context of "intent to harm," but does not allege "actual malice," required under *Gertz*.  Amended Complaint at ¶¶ 31, 51, 54, 55, 62, 65, & 66.

Adscend claims "upon information and belief" that Defendants knew the contents of the video were false.  *Id*. at ¶¶ 31, 51, 52, 62, & 63.  Pleading on information and belief is only appropriate "where the facts are peculiarly within the control of the defendant."  *Keiler v. Harlequin Enters.*, 751 F.3d 64, 71 (2d Cir. 2014).  Although on a surface level, Defendants' alleged knowledge might be peculiarly within their control, it is speculative to suggest Defendants have such knowledge without any basis for it.  Further, Plaintiff asserts Defendants acted with "reckless disregard" by publishing the video instead of continuing their investigation.  Amended Complaint at ¶¶ 53 & 64.  There is no duty or reason why Defendants should be required to continuously check whether Adscend is still defrauding its clients.  Plaintiff otherwise offers no factual basis to otherwise support actual knowledge.  Thus, actual malice was not plausibly alleged.

### 3.2.4   Plaintiffs Fail to Plausibly Allege Causation

Finally, as to the claim of defamation (Second Cause), there is no factual basis for the assertion that any alleged statement by Defendants proximately caused Plaintiff to lose OATH and SpotX as alleged.  *See* Amended Complaint at ¶¶ 67 & 68.

Other parts of the video might have been the cause or it merely resulted in SpotX and White Ops taking a closer look at Adscend and blacklisting them for other cause.[9]  "This is a textbook illustration of the *post hoc ergo propter hoc* fallacy."  *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997); *see also Taylor v. Meirick*, 712 F.2d 1112, 1120 (7th Cir. 1983) ("post hoc ergo propter hoc is a naive theory of causation.").  Plaintiff's conclusory

---

[9]   For instance, the prior regulatory issues and litigation by Facebook and the State of Washington, and/or utilization of deceptive/incentivized marketing techniques in violation of third-party contractual prohibitions, such as paying users, are other potential reasons why Adscend might be appropriately blacklisted.

allegations are insufficient to assert a causal nexus between the few parts of the video that they claim are defamatory and the alleged loss of business.  Thus, separately, the Second Cause of Action should be dismissed.

### 3.3 Defendants Did Not Plausibly Engage in the Alleged Unlawful Intentional Interference

Plaintiff's Third Cause, intentional interference with prospective economic advantage, fares no better than their defamation claims.  "In Connecticut, there is no clear difference between tortious interference with contractual relations and tortious interference with prospective economic advantage.  *Landmark Inv. Grp., LLC v. Calco Constr. & Dev. Co.*, No. CV096002117, 2013 Conn. Super. LEXIS 2374, at *23 (Super. Ct. Oct. 11, 2013) citing *Wellington Systems, Inc. v. Redding Group, Inc.*, 49 Conn.App. 152, 168, 714 A.2d 21, cert denied 247 Conn. 905, 720 A.2d 516 (1998).  "The essential elements of such a claim include the existence of a contractual or beneficial relationship and that the [defendant], knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss[.]"  *Landmark Inv. Grp., LLC v. Calco Constr. & Dev. Co.*, 141 Conn. App. 40, 50-51, 60 A.3d 983, 990 (2013).

Under Connecticut law, "there must be evidence that the interference resulted from the defendants commission of a tort.  [A] claim is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself."  *N. Am. Energy Sys., LLC v. New Eng. Energy Mgmt.*, 269 F. Supp. 2d 12, 19 (D. Conn. 2002) quoting *Downes Patterson Corp. v. First Nat'l Supermarkets, Inc.*, 64 Conn. App. 417, 429, 780 A.2d 967 (2001).  Such intentional interference must be "without justification, not malice alone."  *Id.*  at 19.

In reviewing this type of case, "not every act that disturbs a contract or business expectancy is actionable."  *Blake v. Levy*, 191 Conn. 257, 260, 464 A.2d 52 (1983) (internal quotation marks omitted).  Importantly, courts reject tortious interference claims where the alleged act of interference is nothing more than the same defamation otherwise claimed.  *See,*

*e.g.*, *Deer Consumer Prods., Inc. v. Little Grp.*, 2012 NY Slip Op 52157(U), ¶ 14, 37 Misc. 3d 1224(A), 1224A (Sup. Ct.).

Adscend alleges no tortious act other than the alleged defamation.  Moreover, even if the alleged defamation could be the act of interference, Defendants cannot be found liable for such defamation for the reasons set forth above.  The sole claim is that the video "branded Adscend as an entity which engages in fraudulent and unethical conduct."  Amended complaint at ¶ 77.  This is substantially true, as evidenced by the events in the video.  Adscend was otherwise already branded as such by the State of Washington, even entering into a Consent Decree over it, as well as Facebook.  Further, there is no any allegation beyond *post hoc ergo propter hoc* for Plaintiff's claim of losses.  Thus, the Third Cause must be dismissed.

### 3.4    No Unfair Trade Practices Claim is Cognizable

In its fourth cause of action, Plaintiff alleges that Defendants used a fictitious e-mail identity and distributed the video in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. sec. 42-11-a, *et seq*.  Amended Complaint at ¶¶ 85-88.  Plaintiff's CUTPA claims are insufficiently pled, and impermissibly made up of mere conclusions and a formulaic recitation of the elements of a cause of actions.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"The purpose of CUTPA is to protect the public from unfair trade practices in the conduct of any trade or commerce, 'and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy.'"  *Eder Bros. v. Wine Merchants. Of Conn., Inc.* 275 Conn. 363, 380 (Conn. 2005) quoting *Daddona v. Liberty Mobile Home Sales, Inc.*, 209 Conn 243, 257, 550 A.2d 1061 (1988).  Plaintiff's allegations do not amount to a CUTPA violation.

The following factors, known as the "cigarette rule," determine whether a trade practice is unfair or deceptive:

> (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness;

(2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*, 296 Conn. 315, 350, 994 A.2d 153 (2010).  None of the factors are met.

First, no unfairness occurred.  As set forth above, Defendants did not engage in defamation, which is the only unlawful conduct alleged.  Amended Complaint at ¶ 86.  There were no false statements of fact; Plaintiff does not, and cannot, deny that the events in the video occurred as described.  Ads were continuous.  Views on mobile devices, per Adscend's code, were reported as desktop-sized views.  Nor is there any basis to suggest the allegations of a pseudonymous report of malfeasance by a competitor violates an established concept of unfairness.  Amended Complaint at ¶¶ 87-88.  As recognized by the Second Circuit, "the First Amendment provides protection for anonymous speech." *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 118 (2d Cir. 2010).  Thus, there can be nothing unethical about using a pseudonym.  And, it cannot be unfair to exercise that right by properly reporting and commenting on a competitor.  Thus, the first factor was not met.  Second, Plaintiff's allegations as to the second factor are merely conclusory.  *See* Amended Complaint at ¶¶ 87-88.  Once more, they claim the pseudonymous reporting is "immoral, unethical, … and oppressive conduct."  *Id*.  There is no basis to suggest use of a pseudonym is immoral, unethical, or oppressive.  The first Chief Justice, John Jay, was one of the pseudonymous authors of the Federalist Papers, along with President James Madison and Secretary of the Treasury Alexander Hamilton.  *See McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 343 n.6 (1995).  No one would say that was immoral, unethical, or oppressive.  And, though perhaps it may be immoral, unethical, or oppressive to share false and misleading information to harm a competitor, this allegation is merely conclusory.  As discussed above, Plaintiff does not deny the factual elements of the video as they occurred.

There is nothing unfair or deceptive about plainly and objectively disclosing Adscend's verifiable conduct.  While Adscend insufficiently alleges that it "discovered the programming

error on December 12, 2017 and immediately fixed it," it has failed to sufficiently allege that Defendants knew or had reason to know that the purported it had been "fixed," or that it was merely a "bug." Thus, the second factor has not been met.

Third, the element of causation is lacking. As discussed above, the allegations of harm, here in paragraphs 89 and 90, lack factual basis in the Amended Complaint. To the degree Adscend was, in fact, damaged by Defendants' alleged conduct, it was only in the context of pointing out Adscend's malfeasance. The pleading only speculates that the video caused the alleged loss of business, without factual basis. As discussed above, there may be other reasons, such as violation of OATH's policy against paying users, and not the content of the video itself, that may have caused the loss of business. Without factual basis, the third factor has not been met.

The allegations of the plaintiff in count four of its complaint are insufficient to allege a cause of action under CUTPA. Thus, as set forth herein, Plaintiff's CUTPA claims must be dismissed for failure to state a claim upon which relief can be granted.

## 4.0    Conclusion

Plaintiff already amended its complaint of right once. Despite having that opportunity, it could not assert a proper basis for any of its claims. This is akin to the type of SLAPP suit the Connecticut legislature recently sought to avoid, to vindicate freedom of speech.[10]  See Conn. Public Act No. 17-71. Adscend merely wishes to silence truthful reporting that it was defrauding its advertisers. Such conduct should not be sanctioned; the Amended Complaint should be dismissed with prejudice.

---

[10]  In the interest of judicial economy, Defendants chose not to file a special motion thereunder, avoiding issues of first impression as to its applicability in diversity jurisdiction cases as well as the particular meaning of legislative language.

Dated:  March 23, 2018                    Respectfully submitted,

                                          /s/ Jay M. Wolman
                                          Jay M. Wolman, ct29129
                                          RANDAZZA LEGAL GROUP, PLLC
                                          100 Pearl Street, 14th Floor
                                          Hartford, Connecticut 06103
                                          Tel:  (702) 420-2001
                                          Fax:  (305) 437-7662
                                          jmw@randazza.com

                                          Richard B. Newman, *pro hac vice*
                                          Hinch Newman LLP
                                          40 Wall Street, 35th Floor
                                          New York, NY 10005
                                          Tel:  (212) 756-8777
                                          Fax:  (866) 449-4897
                                          rnewman@hinchnewman.com

                                          *Attorneys for Defendants*

Case No. 3:18-cv-00141-MPS

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 23rd day of March 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel:  (702) 420-2001
Fax:  (305) 437-7662
jmw@randazza.com