## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ADSCEND MEDIA LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>DOGOOD MEDIA LLC and ERIC FARRELL,<br><br>                    Defendants. | **No. 3:18-cv-00141-MPS**<br><br>**SECOND AMENDED COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Adscend Media LLC ("Adscend"), by and through its attorneys, Tarter Krinsky & Drogin LLP, for its Second Amended Complaint against defendants DoGood Media LLC ("DoGood") and Eric Farrell (individually and collectively, "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.      This action is for defamation *per se*, defamation, tortious interference with prospective business relations and unfair trade practices under the Connecticut Unfair Trade Practices Act, all arising from DoGood's and Farrell's creation and distribution of a video and emails which contained false statements that Adscend engages in advertising fraud.  All of this was done with the intent of damaging Adscend and its business.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as this case is between citizens of different states and the amount in controversy exceeds $75,000.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and

(2).  Defendants reside within this judicial district and, upon information and belief, committed the acts complained of herein within this judicial district.

## PARTIES

4.      Adscend is a limited liability company formed under the laws of the State of Delaware with a principal place of business in Austin, Texas.  All of Adscend's members are domiciled in Texas.

5.      Upon information and belief, DoGood is a limited liability company formed under the laws of the State of Connecticut with places of business at 40 Richards Avenue, Norwalk, Connecticut and in Chicago, Illinois.  Upon information and belief, none of the members of DoGood are domiciled in Texas.

6.      Upon information and belief, Farrell resides in Stamford, Connecticut and works at DoGood in Norwalk, Connecticut.

7.      Upon information and belief, at all relevant times, Farrell acted at the instruction and with the prior knowledge of DoGood and acted on behalf of DoGood with DoGood's prior authorization.

## ADSCEND AND ITS BUSINESS

8.      Adscend is an Internet marketing company which provides a platform that enables third party Internet advertisers to use Adscend's proprietary technology to serve innovative advertising programs to Internet users.

9.      Adscend operates in a marketing space known as "rewarded advertising," which is a form of advertising in which an Internet user receives a reward for viewing an ad.  All of Adscend's advertising solutions use this approach.  These solutions allow Internet users to watch video content licensed by NBC and Fox, among others, along with an advertisement placed by a particular third party advertiser, and earn a small reward for watching the content.

2

Adscend's name does not appear on any of the third party advertising or licensed content viewed by users of Adscend's services.

10.     Adscend works with tens of thousands of companies that drive Internet traffic to Adscend's websites (these companies are known as publishers) where the advertisements and licensed video content are shown for the companies whose goods and services are being promoted by Adscend (these companies are known as advertisers).

11.     Companies like Adscend are attractive to advertisers because they have relationships with tens of thousands of publishers, giving the advertiser a much larger reach than it would ordinarily have on its own.

12.     Advertisers that desire to use Adscend's platform to promote their goods and services on the Internet purchase advertising space on Adscend's owned and operated video properties.

13.     Typically, Adscend works with advertising partners known as supply side platforms ("SSP") which make a large number of video advertisements from a variety of advertisers available for placement by companies like Adscend.

14.     Advertisers, through SSPs, pay Adscend for its services based on the numbers of Internet users who watch their advertisements on Adscend's video platform during a defined period of time.  In turn, Adscend pays each of its publishers who drive traffic to a particular advertisement a portion of the revenue that it receives from the advertiser responsible for the advertisement.

15.     Among the SSPs that Adscend does business with are OATH, SpotX and Telaria.

16.     Through SSP's, Adscend also does business with demand side platforms such as

Google's DoubleClick Bid Manager ("DBM").

17.     Adscend displays the third party advertising and licensed video content in high resolution; and Adscend's platform is optimized to be viewed on larger video screens such as those used with desktop and laptop computers.  That is because Adscend's research shows that approximately 95% of the views of videos hosted by Adscend are watched on larger screens. Nevertheless, advertising and videos hosted by Adscend can be viewed on mobile devices.  The third-party video player technology used by Adscend automatically adjusts the advertising and videos so that they can fit on the smaller screens of mobile devices.  Adscend recently learned, *i.e.,* in mid-January 2018, that this is accomplished by the third-party video player lowering the resolution of the video.  This adjustment is not noticeable to the human eye.

18.     At all relevant times, Adscend's advertising partners were and continue to be informed as to whether their respective advertisements hosted by Adscend were viewed on a mobile device or on a device with a larger screen such as a desktop or laptop.  In fact, Adscend's mobile advertising inventory was and continues to be labeled and sold as such. None of Adscend's advertising partners have ever complained about this issue.

19.     At all relevant times, the rates charged to Adscend's advertising partners were accurately charged based on the type of device (mobile or large screen) on which their respective advertisements were viewed and the correct resolution.

20.     Adscend's video platform services have been extremely successful, generating hundreds of millions of views and millions of dollars in revenue for Adscend.

21.     Adscend is known in the industry to take strong and active measures to ensure that its platform is not used to engage in advertising fraud.  Among other things, Adscend uses both technological and human measures to weed out questionable affiliate applications,

4

blocking all known virtual private networks (VPNs), proxies, and bots, utilizes multiple industry-leading anti-fraud verification/pre-bid solutions to ensure there are no gaps in its detection processes and, when it discovers improper conduct, taking prompt action to stop it.

22.     Because of its strong anti-fraud measures, Adscend is known to be a reputable, honest company that provides high quality service to its advertisers and publishers.

23.     Adscend is a very successful business, with close to 40,000 active publishers and relationships with SSPs that represent some the most famous companies in the world.   On information and belief, and based on the events set forth below, Adscend's success is due, in part, to its reputation of operating a "clean" business.

24.     In early December 2017, as a result of an inadvertent configuration error made when one of Adscend's employees was updating Adscend's platform, some of the persons using mobile devices to view advertisements placed on two of Adscend's three video platforms, LootUp.tv and Stak.tv, may have sometimes been shown the advertisement multiple times and not shown the licensed video content that was supposed to follow the advertisement.  Notably, Adscend's primary and most profitable video platform, EngageMe.tv, was not affected by the error.  The advertisements and licensed content played as intended on that platform.

25.     In some instances, this error caused the advertisement to play simultaneously with and on top of the licensed content – for which Adscend had to pay a fee.  In other words, even though the user did not see the content, Adscend, which pays a license fee for the content based on the number of views, had to pay for a "view" that the viewer did not see.

26.     Adscend learned of the issue in early December 2017 and diligently worked to resolve it.  Adscend discovered the cause of the problem on or about December 12, 2017 and immediately fixed it.  After this fix, Adscend's video platform worked as intended: viewers

were shown an advertiser's advertisement once and then shown the licensed video.

27.     To the best of Adscend's knowledge, the "bug" caused by the configuration error was a one-time occurrence.

## DEFENDANTS' WRONGFUL CONDUCT

28.     Upon information and belief, DoGood is an Internet marketing company which has been and continues to be a direct competitor of Adscend.

29.     Upon information and belief, DoGood, among other things, makes its advertisers' video advertisements available for placement by publishers and receives a commission when the videos are watched by Internet users.

30.     According to Farrell's LinkedIn page, Farrell has been an account manager for DoGood since October 2016.

31.     In or about December 2017 or January 2018, Defendants created a video with the false and defamatory title, "A look at Adscend Media's Deceptive Ad Monetization System" (the "Video").

32.     Defendants, in the Video, make the following false and defamatory statements

   a.     "A look at Adscend Media's Deceptive Ad Monetization System;"

   b.     "Continuous video ads with no content;"

   c.      "Who did it? … engageme.tv … Adscend Media;"

   d.      "Who is advanced enough to pull this off? Adscend Media;"

   e.     "Highly sophisticated scheme to sell small low value low resolution inventory as high value high resolution inventory;"  and

   f.     "Adscend Media are (sic) again cheating the system by selling high frequency low resolution video ads as large ads."

33.     In addition, Defendants falsely state in the Video that Adscend engages in

"hack[s]" and "trick[s]" in order to defraud advertisers.

34.     The Video also contains portions of a January 2012 press conference held by the State of Washington's attorney general, who was running for governor at the time, announcing the commencement of two lawsuits brought against Adscend on January 26, 2012 by the State of Washington and Facebook, respectively, *State of Washington v. Adscend Media, et al.*, 2:12-cv-00139-MJP (W.D. Wash.) and *Facebook, Inc. v. Adscend Media, LLC et al.*, No. 5:12-cv-00414-LHK (N.D. Cal.).

35.     Despite being brought with great fanfare, these lawsuits ended with a whimper approximately three months later with Facebook filing a Voluntary Notice of Dismissal (ECF No. 23) and Adscend and the State of Washington entering into a Consent Decree which did not contain an admission or finding of liability or an award of damages.  (ECF No. 25).

36.     To the best of Adscend's knowledge, after these lawsuits ended in early 2012, it has not been the subject of any investigations by a governmental entity.

37.     Upon information and belief, Farrell initially recorded the portions of the Video that purport to show advertising on Adscend's sites early in the day on December 12th, 2017, and played a significant role in the creation and distribution of the Video.

38.     Even though Adscend corrected the configuration error regarding repeating advertisements on December 12, 2017, Defendants, upon information and belief, with the intent to damage Adscend, uploaded the Video to YouTube on January 8, 2018.  The Video, which can be found at https://www.youtube.com/watch?v=5cgxDsKrqyA, (a) creates the false and misleading impression that the bug was: (1) an intentional act by Adscend; and (2) an ongoing issue and (b) falsely claims that Adscend Media sells mobile low resolution video ads as large high resolution ads.

39.     In addition, beginning on or about January 8 or 9, 2018, Defendants, upon information and belief, with the intent to damage Adscend, began distributing the Video to Adscend's advertising partners, including, without limitation, OATH, SpotX, Google and Telaria, and to companies that specialize in detecting Internet fraud, including, without limitation, White Ops.   Upon information and belief, Defendants also sent the Video to advertisers whose advertisements are shown on Adscend's platform.

40.     At the time Defendants uploaded the Video to YouTube and began distributing it, Defendants knew that the statements in the Video hereinabove alleged were false because, for among other reasons, Farrell and DoGood accessed Adscend's systems and viewed advertising displayed thereon on at least five occasions between December 16 and 28, 2017, *i.e.*, after Adscend corrected the configuration error regarding repeating advertisements on December 12, 2017 and before Defendants uploaded the Video to YouTube on January 8, 2018.

41.     On two of those occasions, Adscend accounts associated with Farrell were used to access Adscend's systems while on the other three occasions, accounts associated with other DoGood personnel were used to access Adscend's systems.

42.     In addition, after Defendants uploaded the Video to YouTube and began distributing it, Farrell and DoGood, on multiple occasions, including on January 11 and 28, 2018, continued to access Adscend's systems and viewed advertising displayed thereon.   The access of Adscend's systems on January 28, 2018, four days *after* the commencement of this action, was made through an Adscend account associated with Farrell.

43.     Because DoGood offers services similar to those offered by Adscend, Defendants, upon and belief, knew that Adscend's supposedly misrepresented resolution of advertisements viewed on its mobile video player is not how advertisers determine what size

advertisement was actually played and whether or not they were appropriately charged for the placement of the advertisement.

44.     Despite Defendants' knowledge that the statements in the Video hereinabove alleged are false, and despite due demand by Adscend, Defendants have not removed the Video from YouTube.

45.     Upon information and belief, Defendants' conduct hereinabove alleged was assisted by Clement Shimizu and Lucas Gomes de Almeida.

46.     According to DoGood's website at www.dogood.media, Shimizu is DoGood's Chief Architect.

47.     According to Gomes de Almeida's LinkedIn page, he is and has been a software developer for DoGood since March 2016.

48.     Upon information and belief, at all relevant times, Shimizu and Gomes de Almeida each acted at the instruction and with the prior knowledge of DoGood and each acted on behalf of DoGood with DoGood's prior authorization.

49.     The following URL is visible on the Video: http://lootup.tv/watchtravel.php?click=109689_1347981785&prof=8571&pub=109689&sub1=EARNGG-10646646118400652612&sub3=   This URL contains publisher, click and user IDs in Adscend's systems which all tie back to accounts created and used by Farrell, Shimizu and Gomes de Almeida.

50.     Upon information and belief, Farrell, Shimizu and Gomes de Almeida all played a role in creating the Video and at all relevant times, DoGood knew of, authorized, and endorsed the actions of Farrell, Shimizu and Gomes de Almedia.

51.     Upon information and belief, Defendants used malicious, surreptitious and

underhanded means to distribute the Video.

52.     Specifically, Adscend has been informed that the Video was sent via email purportedly from Jacob Greenstein, Director of Strategic Accounts, Schaumburg Marketing Agency, 1475 Woodfield Road, Unit 105, Schaumburg, Illinois 60173 with an email address of jgreenstein@schaumburgmarketing.com (the "Emails").

53.     Upon information and belief, Schaumburg Marketing Agency does not exist and Jacob Greenstein, the supposed Director of Strategic Accounts of that company, is a fictitious person.  For example, Adscend has been informed that there is no entity known as Schaumburg Marketing Agency located at 1475 Woodfield Road, Schaumburg, Illinois.

54.     Adscend has been informed that in the Emails, "Mr. Greenstein" claimed to be a disgruntled advertiser.

55.     Upon information and belief, Defendants created, sent and otherwise were responsible for the creation and distribution of the Emails.

### ADSCEND IS INJURED BY DEFENDANTS' ILLEGAL CONDUCT

56.     On January 9th, 2018, SpotX informed Adscend that all of Adscend's websites and applications were being blacklisted in response to the information contained in the Video.

57.     Specifically, on January 9, 2018, SpotX wrote to Adscend stating, "I wanted to reach out today and let you know that the below properties have been added to the SpotX demand blacklist. This is a result of some buyers reaching out about the fraudulent activity seen in the following video: https://www.youtube.com/watch?v=5cgxDsKrqyA&feature=youtu.be [i.e., the Video] … Engageme.TV … Lootup.TV … Stak.TV … adscendmedia.com."

58.     SpotX's blacklist remains in place, meaning that Adscend can no longer run advertisements made available through SpotX's supply side platform.  Until January 9, 2018, SpotX was a significant source of revenue for Adscend.

59.     On January 18, 2018, Adscend learned that the ad verification service WhiteOps had placed on its blacklist the three primary domain names on which Adscend provides its video platform.  Upon information and belief, WhiteOps blacklisted Adscend as a direct result of the false and defamatory statements made in the Video.  Notably, prior to the publication of the Video by Defendants, WhiteOps' website traffic verification service has identified only 0.26% of Adscend's traffic as questionable.

60.     OATH uses WhiteOps as part of its fraud detection programs.  Because Adscend was placed on WhiteOp's blacklist, from January 18, 2018 through January 26, 2018, it was unable to generate any revenue through OATH, as all of Adscend's domains were blocked by OATH.  Before January 18, 2018, OATH was a significant source of revenue for Adscend.  As a result of numerous discussions between Adscend and OATH, OATH resumed doing business with Adscend on January 27, 2018.

61.     On or about January 30, 2018, Adscend learned that it had been blacklisted from DBM since on or about January 10, 2018.  Upon information and belief, DBM blacklisted Adscend as a direct result of the false and defamatory statements made in the Video by Defendants.  Because Adscend has been blacklisted by DBM, it has been unable to generate any revenue through DBM, as all of Adscend's domains have been blocked.  Until January 2018, DBM was a significant and growing source of revenue for Adscend.

62.     Adscend has engaged in significant time and effort to have the SpotX and DBM blacklists removed.  To date, those efforts have been unavailing.

### FIRST CAUSE OF ACTION

**(Defamation *Per Se*)**

63.     Adscend repeats and re-alleges the allegations of Paragraphs 1-62 as if fully set forth herein.

64.     On or about January 8, 2018, Defendants, upon information and belief, with the intent to damage Adscend, posted the Video on YouTube and on or about January 8 or 9, they began distributing the Video to Adscend's SSPs such as OATH, SpotX and Telaria, and to Internet monitoring companies that specialize in detecting Internet fraud, including White Ops. Upon information and belief, Defendants also sent the Video to other advertisers whose advertisements are shown on Adscend's platform.

65.     The Video makes the following false and defamatory statements:

  a. "Adscend Media's Deceptive Ad Monetization System;"

  b. "Continuous video ads with no content;"

  c. "Who did it? … engageme.tv … Adscend Media;"

  d. "Who is advanced to pull this off? Adscend Media;"

  e. "Highly sophisticated scheme to sell small low value low resolution inventory as high value high resolution inventory;"  and

  f. Adscend Media are (sic) again cheating the system by selling high frequency low resolution video ads as large ads."

66.     In addition, Defendants falsely state in the Video that Adscend engages in "hack[s]" and "trick[s]" in order to defraud advertisers.

67.     At all relevant times, Defendants, upon information and belief, knew that the allegations in the Video regarding Adscend's supposed fraudulent and unethical conduct were false and that the false and misleading impressions caused by these statements were false, and made those statements with malice and the intent to harm Adscend.

68.     At the time Defendants uploaded the Video to YouTube and, upon information and belief, forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's

advertisers, Defendants knew or acted with reckless disregard that the foregoing statements were false and that the false and misleading impressions caused by these statements were false.

69.     Prior to uploading the Video to YouTube and distributing the Video to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers, Defendants acted with knowledge or acted with reckless disregard because, after December 12, 2017, they accessed Adscend's systems multiple times and, as a result, knew that the advertisements were no longer repeating and otherwise failed to conduct an investigation in order to determine whether the statements made in the Video were true.

70.     Defendants uploaded the Video to YouTube and, upon information and belief, forwarded it to Adscend's SSP's, advertising monitoring entities and Adscend's advertisers with malice and with the intent to harm Adscend, including by damaging its reputation.

71.     Defendants uploaded the Video to YouTube and, upon information and belief, forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers with malice and with the intent to harm Adscend in the conduct of its business.

72.     As a direct and proximate cause of Defendants' conduct set forth herein, Adscend has been damaged.  The conduct alleged herein was willful, malicious, fraudulent, and done with the intent to harm Adscend such that punitive and/or exemplary damages should be awarded.

73.     Defendants' conduct, unless and until enjoined and restrained by this Court, has caused and will continue to cause irreparable injury to its business as described above. Adscend has no adequate remedy at law for this injury.

## SECOND CAUSE OF ACTION

### (Defamation)

74.     Adscend repeats and re-alleges the allegations of Paragraphs 1-73 as if fully set forth herein.

75.     On or about January 8, 2018, Defendants posted the Video on YouTube, and upon information and belief, on or about January 8 or 9, began distributing the Video to Adscend's SSPs such as OATH, SpotX, DBM and Telaria, and to companies that specialize in detecting Internet fraud, including White Ops.  Upon information and belief, Defendants also sent the Video to other advertisers whose advertisements are shown on Adscend's platform.

76.     The Video made the following false and defamatory statements:

   a.   "Adscend Media's Deceptive Ad Monetization System;"

   b.   "Continuous video ads with no content;"

   c.    "Who did it? … engageme.tv … Adscend Media;"

   d.    "Who is advanced to pull this off? Adscend Media;"

   e.    Highly sophisticated scheme to sell small low value low resolution inventory as high value high resolution inventory;" and

   f.    "Adscend Media are (sic) again cheating the system by selling high frequency low resolution video ads as large ads."

77.      In addition, Defendants falsely state in the Video that Adscend engages in "hack[s]" and "trick[s]" in order to defraud advertisers.

78.     At all relevant times, Defendants, upon information and belief, knew that the allegations in the Video regarding Adscend's supposedly fraudulent and unethical conduct were false and that the false and misleading impressions caused by these statements were false, and made those statements with malice and the intent to harm Adscend.

79.     At the time Defendants uploaded the Video to YouTube and, upon information and belief, forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers, Defendants knew or acted with reckless disregard that the foregoing statements were false and that the false and misleading impressions caused by these statements were false.

80.     Prior to uploading the Video to YouTube and distributing the Video to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers, Defendants knew or acted with reckless disregard because, after December 12, 2017, they accessed Adscend's systems multiple times and, as a result, knew that advertisements were no longer repeating and otherwise to conduct an investigation in order to determine whether the statements made in the Video were true.

81.     Defendants uploaded the Video to YouTube and, upon information and belief, forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers with malice and with the intent to harm Adscend, including by damaging its reputation.

82.     Defendants uploaded the Video to YouTube and, upon information and belief, forwarded it to Adscend's SSPs, advertising monitoring entities and Adscend's advertisers with malice and with the intent to harm Adscend in the conduct of its business.

83.     As a direct and proximate cause of Defendants' conduct set forth herein, Adscend has been damaged.  Among other things, its business relationships with SpotX and DBM have been destroyed and its domain names were blacklisted by WhiteOps, resulting in a cut-off in revenue from advertising placed through OATH from January 18 through January 26, 2018.

84.     As a direct and proximate cause of Defendants' conduct set forth herein, Adscend will no longer receive revenue from SpotX or DBM and lost revenue from OATH

from January 18 through January 26, 2018.

85.     As a direct and proximate cause of Defendants' conduct set forth herein, Adscend has been damaged in an amount to be determined at trial but believed to be at least $4,500,000.

86.     The conduct alleged herein was willful, malicious, fraudulent, and done with the intent to harm Adscend such that punitive and/or exemplary damages should be awarded.

87.     Defendants' conduct, unless and until enjoined and restrained by this Court, has caused and will continue to cause irreparable injury to its business as described above. Adscend has no adequate remedy at law for this injury.

### THIRD CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage)

88.     Adscend repeats and realleges the allegations of paragraphs 1 through 87 as if fully set forth herein.

89.     Until January 9, 2018, Adscend had existing business relationships with SpotX, DBM and OATH whereby those SSPs regularly placed advertising on Adscend's video platform.  Adscend had a reasonable expectation of continued future business relationships with the afore-mentioned SSPs.

90.     At all relevant times, Defendants, upon information and belief, knew of each and every one of these relationships.

91.     Upon information and belief, at all relevant times, Defendants knew that Adscend's SSPs would cease to do business with Adscend if it was engaging in fraudulent or unethical conduct.

92.     Upon information and belief, at all relevant times, Defendants knew that fraud detection services such as WhiteOps would blacklist Adscend's domain names if WhiteOps was

16

informed that Adscend was engaging in fraudulent or unethical conduct and that Adscend could not do business with SSPs such as OATH in the event that Adscend's domain names were blacklisted.

93.     Defendants, with the intent of disrupting the relationships between Adscend and SpotX, DBM and OATH, uploaded the Video to YouTube and, upon information and belief, forwarded the Video to SpotX, DBM, OATH and WhiteOps knowing that the Video contained false and defamatory statements that branded Adscend as an entity which engages in fraudulent and unethical conduct, all of which are independently wrongful and separately actionable under Connecticut law.

94.     As a result of Defendants' wrongful conduct hereinabove alleged, Adscend's relationships with SpotX and DBM have been destroyed and its relationship with OATH was disrupted.

95.     By reason of such destruction and disruption, Adscend no longer receives any revenue from either SpotX or DBM and received no revenue from OATH between January 18 through January 26, 2018.  Based on historical patterns, Adscend expected to receive at least $4,500,000 from SpotX and DBM in 2018 alone.   As a direct and proximate result of Defendants' conduct, none of that revenue will be received by Adscend.

96.     As a direct and proximate cause of Defendants' conduct set forth herein, Adscend has been damaged in an amount to be determined at trial but believed to be at least $4,500,000.

97.     The conduct alleged herein was willful, malicious, fraudulent, and done with the intent to harm Adscend such that punitive and/or exemplary damages should be awarded.

98.     Defendants' conduct, unless and until enjoined and restrained by this Court, has

caused and will continue to cause irreparable injury to its business as described above. Adscend has no adequate remedy at law for this injury.

## FOURTH CAUSE OF ACTION

### (Unfair Trade Practices under Conn. Gen. Stat. § 42-110b)

99.     Adscend repeats and realleges the allegations of paragraphs 1 through 98 as if fully set forth herein.

100.    At all relevant times, Adscend and DoGood have been and continue to be direct competitors.

101.    As hereinabove alleged, Defendants, upon information and belief, with the intent to injure Adscend, distributed defamatory statements concerning Adscend's business practices by uploading the Video to YouTube and by forwarding the Video to Adscend's SSPs, Internet monitors and Adscend's advertisers.

102.    At all relevant times, Defendants knew that the statements they distributed about Adscend's business practices were false and defamatory.

103.    Defendants' conduct as hereinabove alleged, was and continues to be unlawful under the common law of the State of Connecticut.

104.    By distributing the Emails under the name of, upon information and belief, a fictitious individual and entity, all with the intent to injure Adscend and to avoid liability for the injuries they caused to Adscend, Defendants engaged in immoral, unethical, unfair and oppressive conduct.

105.    By uploading the Video, which Defendants knew contained false statements about Adscend's business practices and created false and misleading impressions about Adscend, to YouTube and, upon information and belief, by forwarding the Video to Adscend's SSPs, Internet monitors and Adscend's advertisers, Defendants engaged in immoral, unethical,

18

unfair and oppressive conduct.

106.    As a direct and proximate cause of Defendants' unfair trade practices, Adscend's business relationships with SpotX and DBM have been destroyed and its relationship with OATH disrupted.

107.    As a direct and proximate cause of Defendants' unfair trade practices, Adscend has been damaged in an amount to be determined at trial but believed to be at least $4,500,000. The injuries to Adscend hereinabove alleged, were caused solely by Defendants' intentional and wrongful actions.  Adscend did not contribute to these injuries and could not have avoided them.  In fact, Adscend has expended significant time and effort working to restore its business relationships with SpotX and DBM but to no avail.

108.    The conduct alleged herein was willful, malicious, fraudulent, and done with the intent to harm Adscend such that punitive and/or exemplary damages should be awarded and its costs and reasonable attorney's fees pursuant to Conn. Gen. Stat. § 42-110b(a) and (d).

## PRAYER FOR RELIEF

**WHEREFORE,** Adscend requests that the Court enter judgment in favor of Adscend and against Defendants, granting the following relief:

a.    Preliminarily and permanently enjoining Defendants, their agents, employees and anyone acting in concert with them, from further distribution, posting or uploading of the Video, or making, without factual basis, communications substantially similar thereto to SSPs, Internet monitors or advertisers;

b.    Requiring Defendants to remove the Video from YouTube;

c.    Requiring Defendants to send written communications to each and every business and person to whom they forwarded the Video, retracting the statements made therein;

d.    Awarding Adscend compensatory damages in a sum to be determined at trial but

not less than $4,500,000, together with any applicable prejudgment and post judgment interest;

e.      Awarding Adscend punitive damages, in an amount to be determined at trial;

f.      Awarding Adscend its costs and reasonable attorney's fees; and

g.      Awarding Adscend such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Adscend hereby demands a trial by jury.


Dated:    April 4, 2018

Respectfully submitted,


**TARTER KRINSKY & DROGIN LLP**

By:  */s/ Mark J. Rosenberg*
        Mark J. Rosenberg

1350 Broadway
New York, New York 10018
Telephone: (212) 216-8000
Facsimile: (212) 216-8001
Mrosenberg@tarterkrinsky.com


*Attorneys for Adscend Media LLC*