**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ADSCEND MEDIA LLC,<br><br>          Plaintiff<br><br>     v.<br><br>DOGOOD MEDIA LLC and<br>ERIC FARRELL,<br><br>          Defendants. | Case No. 3:18-cv-00141-MPS<br><br><br><br>April 18, 2018 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S**
**SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel:    (702) 420-2001
Fax:    (305) 437-7662
jmw@randazza.com

Richard B. Newman, *pro hac vice*
Hinch Newman LLP
40 Wall Street, 35th Floor
New York, NY 10005
Tel:    (212) 756-8777
Fax:    (866) 449-4897
rnewman@hinchnewman.com

*Attorneys for Defendants*

ORAL ARGUMENT REQUESTED

## TABLE OF CONTENTS

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS  PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM ........................................... 1

1.0   FACTUAL BACKGROUND ........................................................................................ 1

   1.1   *General Overview* ..................................................................................... 1

   1.2   *The Video Shows Adscend Scammed Advertisers* ............................................ 2

   1.3   *Adscend's Scam is Revealed* ........................................................................ 5

2.0   LEGAL STANDARD ................................................................................................. 7

3.0   ARGUMENT ........................................................................................................... 7

   3.1   *Defendants' Alleged Statements were Not Plausibly False and are Not Actionable | Defamation* .................................................................................. 8

     3.1.1   The Alleged Statements are Not Plausibly False .............................. 9

     3.1.2   Defendants did Not Engage in Defamation by Implication .............. 12

     3.1.3   Plaintiff Failed to Plausibly Allege Actual Malice ......................... 12

     3.1.4   Plaintiffs Fail to Plausibly Allege Causation ................................. 14

   3.2   *Defendants Did Not Plausibly Engage in the Alleged Unlawful Intentional | Interference* .............................................................................................. 15

   3.3   *No Unfair Trade Practices Claim is Cognizable* .......................................... 16

4.0   CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Arista Records Ltd. Liab. Co. v. Doe*,
   604 F.3d 110 (2d Cir. 2010) .................................................................................. 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 7, 16

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
   151 F. Supp. 3d 287 (E.D.N.Y. 2015) ................................................................... 10

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015) .................................................................................. 13

*Blake v. Levy*,
   191 Conn. 257, 464 A.2d 52 (1983) ...................................................................... 15

*Chambers v. Time Warner*,
   282 F.3d 147 (2d Cir. 2002) .................................................................................... 2

*Colon v. Town of W. Hartford*,
   2001 U.S. Dist. LEXIS 484 (D. Conn. Jan. 5, 2001) ............................................. 10

*Comput. Assocs. Int'l v. Altai*,
   982 F.2d 693 (2d Cir. 1992) .................................................................................. 10

*Contemporary Mission v. N.Y. Times Co.*,
   842 F.2d 612 (2d Cir. 1988) .................................................................................. 13

*Daddona v. Liberty Mobile Home Sales, Inc.*,
   209 Conn 243, 550 A.2d 1061 (1988) ................................................................... 16

*Deer Consumer Prods., Inc. v. Little Grp.*,
   2012 NY Slip Op 52157(U), 37 Misc. 3d 1224(A) (Sup. Ct.) .................................. 16

*Devone v. Finley*, No. 3:13-CV-00377 (CSH),
   2014 U.S. Dist. LEXIS 36356 (D. Conn. Mar. 20, 2014) ...................................... 8, 9

*Dong v. Board of Trustees of Leland Stanford University*,
   191 Cal. App. 3d 1572, 236 Cal. Rptr. 912 (1987) ................................................ 10

*Downes Patterson Corp. v. First Nat'l Supermarkets, Inc.*,
   64 Conn. App. 417, 780 A.2d 967 (2001) ............................................................. 15

*Eder Bros. v. Wine Merchants. Of Conn., Inc.*,
    275 Conn. 363 (Conn. 2005) .................................................................................. 16

*Estate of Gomez v. Larson*, CV 980084646,
    1999 Conn. Super. LEXIS 1535 (Super. Ct. June 8, 1999) ................................... 12

*Facebook, Inc. v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*,
    Case No. 5:12-cv-00414 (N.D. Cal filed Jan. 26, 2012) ........................................ 4

*Friedman v. Boston Broadcasters, Inc.*,
    402 Mass. 376, 522 N.E.2d 959 (1988) ............................................................... 10

*Gambardella v. Apple Health Care, Inc.*,
    291 Conn. 620, 969 A.2d 736 (Conn. 2009) ........................................................... 8

*Garrison v. Louisiana*,
    379 U.S. 64 (1964) ................................................................................................ 13

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) ........................................................................................ 12, 14

*Goodrich v. Waterbury Republican-American, Inc.*,
    188 Conn. 107, 448 A.2d 1317 (1982) ................................................................... 9

*Greenbelt Cooperative Publishing Association v. Bresler*,
    398 U.S. 6 (1970) .................................................................................................. 13

*Harasz v. Katz*,
    239 F. Supp. 3d 461 (D. Conn. 2017) ................................................................... 13

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*,
    296 Conn. 315, 994 A.2d 153 (2010) .................................................................... 17

*Hotchner v. Castillo-Puche*,
    551 F.2d 910 (2d Cir. 1977) ................................................................................... 9

*Indiaweekly.com, LLC v. Nehaflix.com, Inc*.,
    596 F.Supp.2d 497 (D. Conn. 2009) ....................................................................... 9

*Keaton v. State Dep't of Rehab. Servs.*, No. 3:16-CV-1810 (MPS),
    2018 U.S. Dist. LEXIS 38597 (D. Conn. Mar. 9, 2018) .......................................... 2

*Keiler v. Harlequin Enters.*,
    751 F.3d 64 (2d Cir. 2014) ................................................................................. 6, 14

*Landmark Inv. Grp., LLC v. Calco Constr. & Dev. Co.*,
    141 Conn. App. 40, 60 A.3d 983 (2013) ............................................................... 15

*Landmark Inv. Grp., LLC v. Calco Constr. & Dev. Co.*,
   No. CV096002117, 2013 Conn. Super. LEXIS 2374 (Super. Ct. Oct. 11, 2013)................... 15

*Lerman v. Flynt Distrib. Co.*,
   745 F.2d 123 (2d Cir. 1984) ................................................................................................ 13

*Lightfoot v. Union Carbide Corp.*,
   110 F.3d 898 (2d Cir. 1997) ................................................................................................ 14

*McIntyre v. Ohio Elections Com'n*,
   514 U.S. 334 (1995) ............................................................................................................ 17

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ................................................................................................................ 10

*N. Am. Energy Sys., LLC v. New Eng. Energy Mgmt.*,
   269 F. Supp. 2d 12 (D. Conn. 2002) .................................................................................... 15

*New Hickory Pizza, Inc. v. TIG Ins. Co.*, No. 5:16-cv-00164-RLV-DSC,
   2017 U.S. Dist. LEXIS 142091 (W.D.N.C. Aug. 31, 2017) ................................................. 2

*Palm Beach Strategic Income, LP v. Salzman*,
   2011 U.S. Dist. LEXIS 46867, 2011 WL 1655575 (E.D.N.Y. May 2, 2011) ......................... 2

*Scott v. Town of Monroe*,
   306 F. Supp. 2d 191 (D. Conn. 2004) .................................................................................... 7

*Simms v. Seaman*,
   308 Conn. 523, 69 A.3d 880 (Conn. 2013) ........................................................................... 8

*Skakel v. Grace*,
   2014 U.S. Dist. LEXIS 30124, 2014 WL 902675 (D.Conn. March 7, 2014) .................... 8, 12

*Strada v. Connecticut Newspapers, Inc.*,
   193 Conn. 313, 477 A.2d 1005 (1984) ................................................................................. 12

*Taylor v. Meirick*,
   712 F.2d 1112 (7th Cir. 1983) ............................................................................................. 14

*Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*,
   517 F.3d 104 (2d Cir. 2008) .................................................................................................. 7

*Washington v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*,
   Case No. 2:12-cv-00129 (W.D. Wash. filed Jan. 26, 2012) .................................................. 4

*Wellington Systems, Inc. v. Redding Group, Inc.*,
   49 Conn.App. 152, 714 A.2d 21, cert denied 247 Conn. 905, 720 A.2d 516 (1998)............... 15

*Woodcock v. Journal Publishing Co., Inc.*,
   230 Conn. 525, 646 A.2d 92 (Conn. 1994) ............................................................................... 8

## STATUTES

15 U.S.C. § 7704 ............................................................................................................................. 4

Conn.Gen.Stat. sec. 42-11-a .......................................................................................................... 16

## RULES

Fed. R. Civ. P. 10 ............................................................................................................................ 2

Fed. R. Civ. P. 12 ................................................................................................................... 1, 2, 7

Fed. R. Civ. P. 8 ............................................................................................................................ 13

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

Plaintiff, Adscend Media, LLC, ("Adscend") got caught red-handed using programming tricks to cheat the third-party advertisers using its platform.  In fact, a close reading of the Second Amended Complaint (Dkt. No. 22) shows that Adscend does not explicitly deny its system was programmed in a manner that cheated its advertisers.  Instead, the Second Amended Complaint attempts to excuse Adscend's misconduct by claiming it actually has very little knowledge about or control over its own websites, and it has acted intentionally or with recklessly indifference to what is actually taking place.

When this misconduct was exposed, allegedly by Defendant DoGood Media, LLC, ("DoGood"), Adscend did the only thing it could to try to spin and shut down this exposure—file a coercive lawsuit.  Defendants DoGood and Eric Farrell hereby move to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**1.0    Factual Background**

**1.1    General Overview**

Adscend pays computer users who want to watch an online video if they agree to also view an ad.  Second Amended Complaint at ¶ 9.  Adscend gets paid by advertisers each time a user watches an ad.  *Id*. at ¶¶ 12-14.  Adscend works with middle-men companies, termed "supply side platforms" or "SSP", such as OATH, SpotX, and Telaria, to obtain the ads from the wide variety of advertisers.  *Id*. at ¶¶ 13-15.  Through SSPs, Adscend also alleges it does business with demand side platforms such as Google's DoubleClick Bid Manager ("DGM").  *Id*. at ¶16.  Advertisers and SSPs prefer when their ads are viewed on large screens, like desktop and laptop computers, rather than on mobile devices, generating significant revenue for Adscend on account of its claims of having primarily large-screen viewers.  *Id*. at ¶¶ 17 & 20.  Adscend delivers these pay-to-view ads through at least three platforms: LootUp.tv, EngageMe.tv, and Stak.tv.  *Id*. at ¶ 24.

DoGood is alleged to be a competitor to Adscend, serving as a platform to enable ads to be shown with video content.  *Id*. at ¶¶ 28-29.  Defendants are alleged to have created a video entitled

"A Look at Adscend Media's Deceptive Ad Monetization System" in December 2017 or January 2018 (hereinafter "the video"). *Id.* at ¶ 31. The video was allegedly uploaded to YouTube on January 8, 2018, at the URL <https://www.youtube.com/watch?v=5cgxDsKrqyA>. *Id.* at ¶ 38.[1] The video is alleged to contain indicia that Farrell and other agents of DoGood were involved with its creation. *Id.* at ¶ 49. Specifically, the video shows a website address for Adscend's LootUp.tv platform allegedly linked to those agents. *Id.*

### 1.2    The Video Shows Adscend Scammed Advertisers

The video begins with a section labeled "#1 Continuous video ads with no content."[2] On the left side of the video is a smartphone and a watch that shows that the events occurring were not spliced together or edited, but happened in real time.[3] The smartphone is connected to LootUp.tv. From approximately the 11 second mark to 2 minutes, 18 seconds, it shows a series of

---

[1]    A true and correct copy of the video was previously manually filed with this Court. *See* Dkt. No. 17-1.

[2]    Under Fed. R. Civ. P. 10(c), the video, identified by URL in the complaint, and the materials in the video, may be considered on a motion to dismiss for failure to state a claim. *See Keaton v. State Dep't of Rehab. Servs.*, No. 3:16-CV-1810 (MPS), 2018 U.S. Dist. LEXIS 38597, at *11 (D. Conn. Mar. 9, 2018) ("In deciding a Rule 12(b)(6) motion, courts may consider documents attached to, integral to, or incorporated by reference in the complaint.") and quoting *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.").

[3]    Adscend now admits that such looping occurred on its LootUp.tv and Stak.tv platforms. *See* Dkt. No. 22 at ¶ 24. Adscend previously pleaded that such looping did not occur on the Stak.tv platform. *See* Dkt. No. 7 at ¶ 22. In the Second Circuit, there are three different approaches to prior inconsistent pleadings: (1) courts may consider prior inconsistent pleadings relevant, but only as controvertible, not conclusive admissions; (2) courts have no obligation to accept as true an amended complaint's allegations if they "directly contradict those facts set forth in the original complaint"…; and (3) courts should typically disregard prior contradictory pleadings but there may be rare cases requiring departure from the rule. *Palm Beach Strategic Income, LP v. Salzman*, 2011 U.S. Dist. LEXIS 46867, 2011 WL 1655575, at *5-*6 (E.D.N.Y. May 2, 2011) (describing the first approach as the one taken by most district courts in the Second Circuit), aff'd, 457 F. App'x 40 (2d Cir. 2012). *New Hickory Pizza, Inc. v. TIG Ins. Co.*, No. 5:16-cv-00164-RLV-DSC, 2017 U.S. Dist. LEXIS 142091, at *14 (W.D.N.C. Aug. 31, 2017). Here, Adscend fails to account for its inconsistency, placing into doubt all of Adscend's claimed excuses for misleading advertisers and SSPs.

seven ads for the TJX Companies (TJ Maxx, Marshalls, & HomeGoods), without any video content between the ads.[4]

Beginning at 1 minute, 26 seconds, the focus of the video shifts to the right side with a section labeled "#2 Mobile device using desktop tag."  A mobile device running the Chrome browser is connected to LootUp.tv, with details displayed on the right, using a desktop computer. The video shows various parameters of Adscend's webpage that serves the ads as part of the code transmitted when a user views the ads.  The video depicts that Adscend, in fact, omitted using certain query parameters that would identify the user as using a mobile device, thereby fooling advertisers into thinking the users were watching them on more desirable larger screens of computers than on tiny-screen mobile devices.[5]

At 1 minute, 51 seconds, the section "#3 Faking Video Player Resolution" begins. It illustrates that Adscend's code misrepresented the width of the ads (854 pixels) to be desktop-sized resolution, rather than the actual mobile-sized resolution of the video player, being a maximum width of 360 pixels.[6]  At 2 minutes, 35 seconds, the video asks "How did they fake it?" The video then shows that Adscend coded a second, buried, "meta" tag called "viewport" that ordinarily would report the true resolution size to override the honest reporting to falsely report the user was using a desktop-sized display. 2:40-3:10.  This is explained to be a "hack[ing]" of "viewport" that causes the SSP and advertiser to think it is desktop sized.  3:14.

The video then transitions to an analysis section at 3:37, first saying "What was done":

#1  High frequency Ads with no content

#2  Mobile Browser uses desktop tag

#3  Hidden Secondary Viewport Masquerades Tiny Mobile Window as Desktop Sized

#4  Very difficult to see the trick because they serve the trick only to mobile devices

---

[4]   This demonstration of repeating ads on the left side recurs in the video beginning at 2:47.

[5]   As shown in the video, discussed below, Adscend actively courts advertisers by promoting desktop-sized traffic.  Consequently, by so deceiving SSPs, Adscend is compensated by advertisers at a higher rate.

[6]   The video uses Google's mobile website's honest reporting of resolution for comparison.

At 4:01, the video asks "Who Did It?"  It answers with "lootup.tv engageme.tv stak.tv" having the "same layout, same code, overlapping content sets, similar ads."  4:09.  It displays nearly identical "ads.txt" files from each of the three sites.  4:15.

Then it displays a webpage showing EngageMe.tv is owned and operated by Adscend. 4:18.  At 4:25 it transitions to Adscend's webpage at <https://adscendmedia.com/advertisers> discussing EngageMe.tv, which promises a High Average AVOC Rate, High Average Viewability Rate, and Large Player (i.e., desktop), but notes that the scores and "large player" are "from running the player in port[r]ait mode and using the second[ar]y viewport trick."  It is called a "[h]ighly sophisticated scheme to sell small low value low resolution inventory as high value high resolution inventory."  4:30.

At 4:32, the video asks "Who is advanced enough to pull this off?", answering at 4:36 "AdscendMedia" and Fehzan Ali and Jeremy Bash.  The video transitions from 4:40 to 6:34 to the Attorney General of the State of Washington announcing the filing of *Washington v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*, Case No. 2:12-cv-00129 (W.D. Wash. filed Jan. 26, 2012) for violations of the Federal CAN-SPAM Act, 15 U.S.C. § 7704 and state law, misusing Facebook to cause users to click on misleading advertising links via "clickjacking".[7]  See Dkt. No. 22 at ¶ 34.  The Washington Attorney General also announced the filing of *Facebook, Inc. v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*, Case No. 5:12-cv-00414 (N.D. Cal filed Jan. 26, 2012) (hereinafter "Facebook Complaint"), in which the same type of allegations, that Adscend, Ali, and Bash trick "users into sending deceptive commercial messages" and "lure Facebook users into participating in deceptive advertising scams" are made.  Facebook Complaint at ¶ 36; see also Dkt. No. 22 at ¶ 34.  The video then provides the following "Conclusion":

> Adscend Media are again cheating the system by selling high frequency low resolution video ads as large ads.  This is sopiscatited [sic] and subtle.  Low resolution ads are worth much less to adverisers [sic] compared to the value of

---

[7]    Adscend, Bash, and Ali entered into a Consent Decree requiring payment of $100,000 and enjoining them from engaging in misleading electronic advertising and messaging.  *Washington v. Adscend Media, LLC, Jeremy Bash, & Fehzan Ali*, Case No. 2:12-cv-00129 (W.D. Wash. filed May 7, 2012).  See Dkt. No. 22 at ¶ 35.

"large" player ads AND there is little demand for tiny video players. This trick is likely netting them many orders of magnitude the amount of money they would have made if they played fair.

Video at 6:34.

At 6:48 the video asks about the ad display and looping scam: "Who was affected?", answering "Adscend Media uses programatic [sic] and direct ads it is difficult to assess the extent. It is likely that many programatic [sic] video advertising campains [sic] were exposed. The following is a selection of campaigns that the researchers witnessed…" Then, from 7:02-7:32 it lists thirty campaigns, including ones by BMW, Honda, Chrysler, Walt Disney, and the Utah Office of Tourism, affected by this scam. It concludes with the recommendation that affected parties lobby for an audit and demand reimbursement. 7:32.

### 1.3    Adscend's Scam is Revealed

Adscend admits that repeating advertisements occurred on its platforms. Dkt. No. 22 at ¶ 25. Adscend called it a "programming bug" and/or "configuration error" that was "corrected" on December 12, 2017. Dkt. No. 7 at ¶ 32;Dkt. No. 22 at ¶ 38. Although it may have paid for the underlying content the viewer was never shown (Dkt. No. 22 at ¶ 25), Adscend does not deny that it enjoyed several times the revenue per "view" than it should have.[8]  There is no allegation it alerted advertisers or SSPs upon the "early December 2017" alleged discovery of the "issue" or disclaimed or remitted the ill-gotten revenue for the up-to-twelve days between the time of the discovery and resolution. *See* Dkt. No. 22 at ¶ 26.

Further, nowhere in the Second Amended Complaint does Adscend actually deny that the apparent misrepresentation of video player size as desktop, rather than mobile, when viewed from mobile devices occurred or claim that it was a "bug." Rather, it claims that resolution-related issues were attributable to "recently learned" facts pertaining to its *own* software. *See id.* at ¶ 17.

---

[8]    In support of its allegations, Adscend alleges that it had to pay a fee for content based upon the number of views. Dkt. No. 22 at ¶ 25. This improperly implies that Adscend had no incentive to purposely loop the ads. However, even if Adscend had to pay for the unseen content, it enjoyed the benefit of revenue each time the looped ads were displayed. Adscend does not deny it enjoyed that benefit nor suggest it reimbursed advertisers for having been paid for ads where viewers did not get to see the content they sought.

To the contrary, Adscend admits that its ads are hard-coded, *i.e.* "optimized", for larger video screens. *Id..* They are then "adjust[ed]" via a "third-party video player lowering the resolution," without any alteration to Adscend's likely reporting to the advertisers that it was displayed on a desktop sized monitor.[9] *Id.* Although Adscend claims the advertisers do not complain, they do not allege if the advertisers ever discovered the misrepresentation. *Id.* at ¶ 18. This scam generates them "millions of dollars in revenue". *Id.* at ¶ 20. Adscend does not allege it alerted its advertisers of this fraud or ceased this practice.

Adscend alleges that Defendants uploaded the video to YouTube on January 8, 2018 and that they began distributing it to advertising partners, advertisers and Internet fraud detection companies that day or the day after. *Id.* at ¶¶ 38-39. It claims that Defendants allegedly knew the statements in the video were false because they allegedly viewed Adscend content on five occasions after the looping advertisement issue was corrected and prior to the publication of the video.[10] *Id.* at ¶ 40. Adscend also claims Defendants used a false identity in distributing the video. *Id.* at ¶¶ 51-55.

As a result of the video, Adscend claims that it was blacklisted from DBM.[11] *Id* at 61. It also claims that a company called "WhiteOps," an ad verification service, put Adscend's three websites on a blacklist and that OATH, an SSP, uses that blacklist, thereby preventing it from

---

[9]   Although Adscend now claims that the advertisers were informed whether ads were displayed on mobile devices and were "accurately charged based on the type of device" (Dkt. No. 22 at ¶¶ 18-19), it does not disclaim that it also reported desktop-sized resolution. Advertisers who make purchase decisions upon information about resolution, rather than information about device, would still have been misled. Such advertisers would then have an unnatural preference for using Adscend, resulting in increased revenue.

[10]   Adscend also alleges that Defendants accessed its platform after publishing the video, including after demand for removal and this suit had been filed. Dkt. No. 22 at ¶¶ 42 & 44. However, Adscend admits that the specific URL attributable to Defendants was visible to all viewers of the video. *Id.* at ¶ 49. Thus, simple logic dictates that all persons, *i.e.* those not affiliated with Defendants, who saw the video could have typed it into their browser.

[11]   Adscend alleges that it was blacklisted by WhiteOps and DBM, "upon information and belief," as a result of Defendants' alleged conduct. Dkt. No. 22 at ¶¶ 59 & 61. Pleading on information and belief is only appropriate "where the facts are peculiarly within the control of the defendant." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 71 (2d Cir. 2014).

running OATH supplied ads.  Id. at ¶¶ 59-60-. However, Adscend alleges no facts to suggest the content of the video caused such blacklisting as opposed, for example, to OATH merely taking a look at Adscend and blacklisting it for other reasons.[12]

**2.0    Legal Standard**

In considering a motion under Fed. R. Civ. P. 12(b)(6), the plaintiff has to have alleged "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of the motion, the allegations are accepted as true.   *Twombly*, *supra*, at 572.   While the Court must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008), it must grant the moving party's motion if "a complaint is based solely on wholly conclusory allegations and provides no factual support for such claims…."  *Scott v. Town of Monroe*, 306 F. Supp. 2d 191, 198 (D. Conn. 2004).  Nothing in the Amended Complaint gives rise to viable claims against Defendants.

**3.0    Argument**

Plaintiff's Amended Complaint fails to adequately allege claims against the Defendants. The video fairly and accurately depicts how Adscend's website was designed, rendering the factual elements non-false and the opinion non-defamatory.  Plaintiff, a public figure, further fails to plead actual malice or a factual basis for its alleged damages.  Similarly, the intentional interference and CUTPA claims fail as a matter of law because there was no actionable defamation or other improper conduct, as well as the absence of a basis for damages.  Additionally, the claims against

---

[12]  *See, e.g.,*  <https://adspecs.oath.com/pages/oathsupplypolicies/?rnd=1_-_Section4> (rule against paying users).

Mr. Farrell in general do not specify how he is liable in any way.  Thus, the matter must be dismissed.

### 3.1    Defendants' Alleged Statements were Not Plausibly False and are Not Actionable Defamation

In the First and Second Causes of Action, Plaintiff alleges the related claims of defamation and defamation per se.  Under Connecticut law, in order "[t]o establish a prima facie case of defamation" a party "must demonstrate that: (1) [the defendant] published a defamatory statement; (2) this defamatory statement identified [the plaintiff] to a third person; (3) this defamatory statement was published to a third person; and (4) [the plaintiff's] reputation suffered injury as a result of the defamatory statement."[13]  *Simms v. Seaman*, 308 Conn. 523, 547-48, 69 A.3d 880 (Conn. 2013) (quoting *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 627-28, 969 A.2d 736 (Conn. 2009)).

For a statement to be defamatory, it must be false.  *Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, at *24 (D. Conn. Mar. 20, 2014).  Moreover, a "defendant will not be held liable as long as the statements at issue are substantially true."  *Woodcock v. Journal Publishing Co., Inc.*, 230 Conn. 525, 554, 646 A.2d 92 (Conn. 1994).  Thus, "[w]here the main charge, or gist, of the [defamation] is true, minor errors that do not change a reader's perception of the statement do not make the statement actionable."  *Skakel v. Grace*, 2014 U.S. Dist. LEXIS 30124, 2014 WL 902675 at *4-5 (D.Conn. March 7, 2014) (internal quotation marks and citations omitted).  These claims cannot survive as the Amended Complaint itself, in consideration of the video, demonstrates a lack of falsity.

---

[13]    The essential difference between claims of defamation and defamation per se is that, "[a]s to the final prong of the prima facie case of defamation, that of injury to reputation, when a plaintiff claims defamation per se, she need not prove damages."  *Gambardella v. Apple Health Care, Inc.*, 86 Conn. App. 842, 850, 863 A.2d 735, 741 (2005).

### 3.1.1   The Alleged Statements are Not Plausibly False

Plaintiff makes minimal allegations as to what it deems to have been defamatory.  It also fails to adequately allege that the alleged "inadvertent" issues did not actually exists, only that it was "unaware."  The only allegedly false statements claimed are:

- "A look at Adscend Media's Deceptive Ad Monetization System"

- "Continuous video ads with no content"

- "Who did it? … engageme.tv … Adscend Media"

- "Who is advanced to pull this off?  Adscend Media";

- "Highly sophisticated scheme to sell small volume low resolution inventory as high value high resolution inventory;"

- Adscend engages are (sic) again cheating the system by selling high frequency low resolution video ads as large ads;" and

- Adscend engages in "hack[s]" and "trick[s]" in order to defraud advertisers.

Amended Complaint at ¶¶ 32, 33, 65, 66, 76 & 77.  These statements are all either substantially true or non-factual statements.  "For a statement to be defamatory, it must be one of fact, rather than one of opinion."  *Devone v. Finley*, No. 3:13-CV-00377 (CSH), 2014 U.S. Dist. LEXIS 36356, at *24 (D. Conn. Mar. 20, 2014); *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, 596 F.Supp.2d 497, 503 (D. Conn. 2009) (under Connecticut common law, "a defamation claim requires a statement that is an assertion of fact, either explicit or implied, and not merely an opinion.  "A statement can be defined as factual if it relates to an event or state of affairs that existed in the past or present and is capable of being known….  An opinion, on the other hand, is a personal comment about another's conduct, qualifications or character that has some basis in fact."  *Goodrich v. Waterbury Republican-American, Inc.*, 188 Conn. 107, 111, 448 A.2d 1317 (1982) (internal citations and quotation marks omitted).  Generally, "expressions of 'pure' opinion (those based upon known or disclosed facts) are guaranteed virtually complete constitutional protection."  *Id.* at 118.  Put simply, "[a]n assertion that cannot be proved false cannot be held libellous."  *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977).

As to calling Adscend "deceptive", "cheating", a "sophisticated scheme" and using "hacks", "tricks", and "cheats", such are protected statements of opinion incapable of being proven false, just as calling something "fraudulent" is protected opinion. Not infrequently, "courts have found that use of the word 'fraud' can be offered as a statement of opinion rather than as a factual declaration." *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287, 294 (E.D.N.Y. 2015) (collecting cases); *see also Friedman v. Boston Broadcasters, Inc.*, 402 Mass. 376, 379-80, 522 N.E.2d 959 (1988) (characterizing plaintiffs as "insurance crooks," who engaged in "insurance fraud" constitutes a statement of opinion and not fact); *Dong v. Board of Trustees of Leland Stanford University*, 191 Cal. App. 3d 1572, 1585-1586, 236 Cal. Rptr. 912 (1987) (letter stating that plaintiff had engaged in "public fraud" was a statement of opinion based on disclosed facts).

The video fully disclosed all the facts on which Defendants allegedly provided their opinions. "An author is constitutionally permitted to use exaggeration, hyperbole, ridicule, sarcasm, stylistic touches and figurative expressions to embellish disclosed facts." *Colon v. Town of W. Hartford*, 2001 U.S. Dist. LEXIS 484, at *15 (D. Conn. Jan. 5, 2001) citing *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 20 (1990). The video shows Adscend had repetitive looping ads and code that falsely represented the ads as playing on desktop-sized, not mobile, systems. Computer code is not accidental; it is a creative, literary work protected by copyright. *Comput. Assocs. Int'l v. Altai*, 982 F.2d 693, 702-03 (2d Cir. 1992). Adscend does not dispute these: the looping is called a "bug" and an "inadvertent configuration error," but the misrepresentation of the ad size is not called a bug or inadvertent error. It is Adscend's code and it was permissible for Defendants to allegedly transmit the opinion that such code – and the purveyors of that code – were deceptive, that it was a highly sophisticated scheme, that it was a hack, that it is a trick, and that it cheats advertisers.[14] Thus, no defamation claim can be maintained as to those allegations.

---

[14] Although Plaintiff now highlights "engageme.tv" as part of the claim of defamation in Paragraphs 65(c) & 76(c) of the Second Amended Complaint, presumably because it claims the looping did not occur on that one of its three named platforms, the statement is not limited to

Similarly, to the extent the statements may be deemed factual, rather than opinion, the video shows them not to be false.  The ads were continuous, Adscend engaged in the deceptive conduct, apparently sold low resolution ads as large ads, and, by extension, Adscend is sufficiently advanced to have done so.

Although Adscend claims to have accurately reported whether an ad was seen on a mobile device or large screen, it does not deny that it also specifically hard-coded ads to be deemed large-screen ads, no matter the device.  The Video objectively depicts that Adscend was utilized tag formatting for desktop inventory, even when the viewer was on a mobile device.  Even if Adscend can be believed that it informed advertising partners on whether ads were viewed on a mobile device or on a larger screen,[15] such as a desktop or laptop, it admits that it automatically adjusted ads, hard-coded as large-sized to fit on smaller screens of mobile devices.  Dkt. No. 22 at ¶ 17. The admission of an adjustment proves the statement in the Video showing the ads to have been hard-coded as large-sized.  Therefore, Defendants allegations were not false to the extent that they were based upon the information depicted in the video.

Adscend alleged lack of actual knowledge concerning purportedly "aberrant" issues on its platform does not make it false that Adscend wrongfully profited therefrom.  Notably, there is no allegation Adscend took remedial measures to remit ill-gotten revenue to the advertisers.  Thus, as to the allegedly defamatory statements of fact, the allegations in the Amended Complaint and the video demonstrate they are cannot be false.

---

looping.  Adscend does not deny the misleading video configuration occurred on all three platforms.

To the extent Plaintiff takes issue with the term "again cheating the system" (Dkt. No. 22 at ¶¶ 65(f) & 76(f)), based on the Washington and Facebook actions not having reached trial, and it semantically could not be "again", once more, the statement is based on the disclosed facts of the allegations made by Facebook and the State of Washington.  Defendants, thus, may express an opinion that the past misconduct was "cheating the system" and this is but another instance, albeit a different type of cheating.

[15]   Adscend concedes that it did not know certain aspects of the code it was using until January 2018, so it lacks a factual basis to make assertions based on that code.

### 3.1.2   Defendants did Not Engage in Defamation by Implication

Plaintiff also wrongly claims actionable defamation based on alleged false and misleading impressions.  Second Amended Complaint at ¶¶ 67, 68, 78, & 79. Connecticut has not recognized defamation by implication.  *See Strada v. Connecticut Newspapers, Inc.*, 193 Conn. 313, 326, 477 A.2d 1005 (1984).

Statements "may create defamation by innuendo when a defendant omits crucial details or fails to 'present the whole picture.'  In order for a statement to create defamation by innuendo there must exist undisclosed facts that, if disclosed, would substantively alter the tone of the statement." *Estate of Gomez v. Larson*, CV 980084646, 1999 Conn. Super. LEXIS 1535, at *16-17 (Super. Ct. June 8, 1999) quoting *Strada*, supra, at 322.

However, there is no allegation of undisclosed facts.  Though Plaintiff asserts that the looping was corrected prior to the publication of the video and that Defendants knew of same, such is not a crucial detail—the looping did occur and the video was properly published, Defendants purported knowledge that the cause may have been a since-corrected "configuration error" is not tantamount to false reporting of what actually occurred.  A reporter writing about a bank robber's exploits need not add that the robber did not rob a bank in the last month.  If Adscend wishes to publicize it is no longer using code to improperly obtain revenue, and remit the revenue it improperly obtained, it is free to engage the marketplace of ideas and share that information.  But there was no omission of undisclosed facts in the video that would have shown Adscend's gains were not ill-gotten so as to substantively alter the tone.

### 3.1.3   Plaintiff Failed to Plausibly Allege Actual Malice

Adscend is a public figure.  "The characterization of a plaintiff as a public figure may rest on two bases: "'[i]n some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts.  More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues.'"  *Skakel v. Grace*, 5 F. Supp. 3d 199, 210 (D. Conn. 2014) quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974).

Adscend is a limited purpose public figure.  To be deemed a limited purpose public figure, a plaintiff must have: "(1) successfully invited public attention to [its] views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected [itself] into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." *Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984).  As to the first two prongs, it invited attention and voluntarily injected itself into the controversy by marketing itself to SSPs and advertisers, making claims about the views and desktop-sized resolution views of its users.  As to the third prong, by its own admission, Plaintiff works with "tens of thousands" of companies, with a platform that generates "hundreds of millions of views" and is "known in the industry"; it claims to be "successful," "with close to 40,000 active publishers," and involve "some of the most famous companies in the world."  Second Amended Complaint at ¶¶ 10 & 20-23.  The Second Circuit has previously deemed a corporate entity a limited purpose public figure where, like Adscend, it solicited millions of views and found itself under governmental scrutiny.  *See Contemporary Mission v. N.Y. Times Co.*, 842 F.2d 612, 620 (2d Cir. 1988).  And Adscend has access to the media as it is, itself, a media entity.  Thus, it is a limited purpose, if not a general purpose, public figure.

Plaintiff did not plausibly allege actual malice necessary under the First Amendment.  "Limited-purpose public figures who seek damages for defamatory statements must show that the statements were made with 'actual malice'—that is, with knowledge that the statements were false or with reckless disregard as to their falsity."  *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015).  "Actual malice" in the context of the First Amendment does not include "spite, hostility or intention to harm."  *Greenbelt Cooperative Publishing Association v. Bresler*, 398 U.S. 6, 10 (1970); *see also Garrison v. Louisiana*, 379 U.S. 64, 78-79 (1964) (reckless disregard not established by a finding of "ill-will, enmity, or a wanton desire to injure.").  Actual malice must be plausibly alleged under Fed. R. Civ. P. 8.  *Harasz v. Katz*, 239 F. Supp. 3d 461, 482-83 (D. Conn. 2017) citing *Biro, supra*.  Adscend generically asserts Defendants acted with "malice," in

the context of "intent to harm," but does not allege "actual malice," required under *Gertz*. Second Amended Complaint at ¶¶ 67, 70, 71, 78, 81 & 82.

Adscend claims "upon information and belief" that Defendants knew the contents of the video were false. *Id.* at ¶¶ 67, 68, 78, & 79. As noted above, pleading on information and belief is only appropriate "where the facts are peculiarly within the control of the defendant." *Keiler v. Harlequin Enters.*, 751 F.3d 64, 71 (2d Cir. 2014). Although on a surface level, Defendants' alleged knowledge might be peculiarly within their control, it is speculative to suggest Defendants have such knowledge without any basis for it. Further, Plaintiff asserts Defendants acted with "reckless disregard" by publishing the video instead of continuing their investigation and having accessed Adscend's system in the interim. Dkt. No. 22 at ¶¶ 69 & 80. There is no duty or reason why Defendants should be required to continuously check whether Adscend is still defrauding its clients. Moreover, even if the looping had been fixed, with the reporting thereon not being demonstrably false, the misleading resolution coding was ongoing. Thus, actual malice was not plausibly alleged.

### 3.1.4   Plaintiffs Fail to Plausibly Allege Causation

Finally, as to the claim of defamation (Second Cause), there is no factual basis for the assertion that any alleged statement by Defendants proximately caused Plaintiff to lose business from OATH, DBM and SpotXas alleged. *See* Second Amended Complaint at ¶¶ 83 & 84.

Other parts of the video might have been the cause or it merely resulted in SpotX, DBM, Oath and/or White Ops taking a closer look at Adscend and blacklisting them for other cause or having independently verified the events depicted in the Video.[16] "This is a textbook illustration of the *post hoc ergo propter hoc* fallacy." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997); *see also Taylor v. Meirick*, 712 F.2d 1112, 1120 (7th Cir. 1983) ("post hoc ergo propter hoc is a naive theory of causation."). Even as to SpotX, though SpotX allegedly informed

---

[16] For instance, the prior regulatory issues and litigation by Facebook and the State of Washington, and/or utilization of deceptive/incentivized marketing techniques in violation of third-party contractual prohibitions, such as paying users, are other potential reasons why Adscend might be appropriately blacklisted.

Plaintiff that it was blacklisted because advertisers "reach[ed] out about the fraudulent activity seen in the" Video, it takes an implausible logical leap to assert this statement means that SpotX relied solely on the Video, rather than the Video merely triggering its own, independent verification.  Dkt. No. 22 at ¶ 57.  Plaintiff's conclusory allegations are insufficient to assert a causal nexus between the few parts of the video that, *arguendo,* are defamatory and the alleged loss of business.  Thus, separately, the Second Cause of Action should be dismissed.

### 3.2 Defendants Did Not Plausibly Engage in the Alleged Unlawful Intentional Interference

Plaintiff's Third Cause, intentional interference with prospective economic advantage, fares no better than their defamation claims.  "In Connecticut, there is no clear difference between tortious interference with contractual relations and tortious interference with prospective economic advantage.  *Landmark Inv. Grp., LLC v. Calco Constr. & Dev. Co.*, No. CV096002117, 2013 Conn. Super. LEXIS 2374, at *23 (Super. Ct. Oct. 11, 2013) citing *Wellington Systems, Inc. v. Redding Group, Inc.*, 49 Conn.App. 152, 168, 714 A.2d 21, cert denied 247 Conn. 905, 720 A.2d 516 (1998).  "The essential elements of such a claim include the existence of a contractual or beneficial relationship and that the [defendant], knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss[.]" *Landmark Inv. Grp., LLC v. Calco Constr. & Dev. Co.*, 141 Conn. App. 40, 50-51, 60 A.3d 983, 990 (2013).

Under Connecticut law, "there must be evidence that the interference resulted from the defendants commission of a tort.  [A] claim is made out when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." *N. Am. Energy Sys., LLC v. New Eng. Energy Mgmt.*, 269 F. Supp. 2d 12, 19 (D. Conn. 2002) quoting *Downes Patterson Corp. v. First Nat'l Supermarkets, Inc.*, 64 Conn. App. 417, 429, 780 A.2d 967 (2001).  Such intentional interference must be "without justification, not malice alone." *Id.* at 19.

In reviewing this type of case, "not every act that disturbs a contract or business expectancy is actionable." *Blake v. Levy*, 191 Conn. 257, 260, 464 A.2d 52 (1983) (internal quotation marks omitted).  Importantly, courts reject tortious interference claims where the alleged act of

interference is nothing more than the same defamation otherwise claimed. *See, e.g., Deer Consumer Prods., Inc. v. Little Grp.*, 2012 NY Slip Op 52157(U), ¶ 14, 37 Misc. 3d 1224(A), 1224A (Sup. Ct.).

Adscend alleges no tortious act other than the alleged defamation. Moreover, even if the alleged defamation could be the act of interference, Defendants cannot be found liable for such defamation for the reasons set forth above. The sole claim is that the video "branded Adscend as an entity which engages in fraudulent and unethical conduct." Dkt. No. 22 at ¶ 93. This is substantially true, as evidenced by the events in the video. Adscend was otherwise already branded as such by the State of Washington, even entering into a Consent Decree over it, as well as Facebook. Further, there is no allegation beyond *post hoc ergo propter hoc* for Plaintiff's claim of losses as otherwise discussed above, as even the message from SpotX is silent as to the specific practice of Adscend that resulted in the termination and whether it was relying solely on the video or whether the video merely prompted an investigation. Thus, the Third Cause must be dismissed.

### 3.3     No Unfair Trade Practices Claim is Cognizable

In its fourth cause of action, Plaintiff alleges that Defendants used a fictitious e-mail identity and distributed the video in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. sec. 42-11-a, *et seq*. Second Amended Complaint at ¶¶ 101-105. Plaintiff's CUTPA claims are insufficiently pled, and impermissibly made up of mere conclusions and a formulaic recitation of the elements of a cause of actions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"The purpose of CUTPA is to protect the public from unfair trade practices in the conduct of any trade or commerce, 'and whether a practice is unfair depends upon the finding of a violation of an identifiable public policy.'" *Eder Bros. v. Wine Merchants. Of Conn., Inc.* 275 Conn. 363, 380 (Conn. 2005) quoting *Daddona v. Liberty Mobile Home Sales, Inc.*, 209 Conn 243, 257, 550 A.2d 1061 (1988). Plaintiff's allegations do not amount to a CUTPA violation.

The following factors, known as the "cigarette rule," determine whether a trade practice is unfair or deceptive:

(1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least a penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen.

*Harris v. Bradley Memorial Hosp. and Health Center, Inc.*, 296 Conn. 315, 350, 994 A.2d 153 (2010).  None of the factors are met.

First, no unfairness occurred.  As set forth above, Defendants did not engage in defamation, which is the only unlawful conduct alleged.  Dkt. No. 22 at ¶¶ 101-103.  There were no false statements of fact; Plaintiff does not, and cannot, deny that the events in the video occurred as described.  Ads were continuous.  Views on mobile devices, per Adscend's code, were reported as desktop-sized views.  Nor is there any basis to suggest the allegations of a pseudonymous report of malfeasance by a competitor violates an established concept of unfairness.  Second Amended Complaint at ¶¶ 102-103.  As recognized by the Second Circuit, "the First Amendment provides protection for anonymous speech."  *Arista Records Ltd. Liab. Co. v. Doe*, 604 F.3d 110, 118 (2d Cir. 2010).  Thus, there can be nothing unethical about using a pseudonym.  And, it cannot be unfair to exercise that right by properly reporting and commenting on a competitor.  Thus, the first factor was not met.

Second, Plaintiff's allegations as to the second factor are merely conclusory.  *See* Second Amended Complaint at ¶¶ 104-105.  Once more, they claim the pseudonymous reporting is "immoral, unethical, … and oppressive conduct."  *Id*.  There is no basis to suggest use of a pseudonym is immoral, unethical, or oppressive.  The first Chief Justice, John Jay, was one of the pseudonymous authors of the Federalist Papers, along with President James Madison and Secretary of the Treasury Alexander Hamilton.  *See McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 343 n.6 (1995).  No one would say that was immoral, unethical, or oppressive.  And, though perhaps it may be immoral, unethical, or oppressive to share false and misleading information to harm a competitor, this allegation is merely conclusory.  Similarly, the allegations that the emails were sent with the intent to secretly harm Adscend are conclusory and lack supporting factual

allegations.  *See* Dkt. No. 22 at ¶ 104.  In fact, if the goal was to divert business to Defendants, as Adscend notes they are "direct competitors" (Dkt. No. 22 at ¶ 100) sending it secretly is a poor way to attract business, as Adscend and DoGood are not alleged to be the only occupants of the field.  Moreover, as discussed above, Plaintiff does not deny the factual elements of the video as they occurred.

There is nothing unfair or deceptive about plainly and objectively disclosing Adscend's verifiable conduct.  While Adscend insufficiently alleges that it "discovered the programming error on December 12, 2017 and immediately fixed it," it has failed to allege that it did not know and should not have known that such code was being utilized.  It has also failed to allege that Defendants knew or had reason to know that the foregoing was merely a "bug" or "configuration error."  Furthermore, Adscend admits that "in-mid January" that it learned *its very own* technology "automatically adjusts advertising videos so that they can fit on smaller screens of mobile devices." Dkt. No. 22 at ¶ 17.  Consequently, and as amply illustrated above, Defendants' opinions based upon the facts, as revealed in the video, were not false and, in fact, reasonably based upon the information depicted in the video.  Thus, Adscend's conclusory allegation that its advertising partners "were and continue to be accurately informed regarding ad views and corresponding charges" fails to establish that Defendants' alleged statements in the Video were false, much less that they were made with the requisite degree of fault.  Even under Plaintiff's preferred scenario, the Video would have simply needed to contain a coda reading: "As of publication, they stopped cheating advertisers through looping, but the misleading resolution issue is ongoing."  The lack of such a coda does not make the Video unfair or deceptive.  Thus, the second factor has not been met.

Third, the element of causation is lacking.  As discussed above, the allegations of harm, here in paragraphs 106 and 107, lack factual basis in the Second Amended Complaint.  To the degree Adscend was, in fact, damaged by Defendants' alleged conduct, it was only in the context of pointing out Adscend's malfeasance.  The pleading only speculates that the video caused the alleged loss of business, without factual basis, even as to the ambiguously-worded message from

SpotX.  As discussed above, there may be other reasons, such as violation of OATH's policy against paying users, or independent investigation of the events depicted in the video, and not the content of the video itself, that may have caused the loss of business.  Without factual basis, the third factor has not been met.

The allegations of the plaintiff in count four of its complaint are insufficient to allege a cause of action under CUTPA.  Thus, as set forth herein, Plaintiff's CUTPA claims must be dismissed for failure to state a claim upon which relief can be granted.

**4.0    Conclusion**

Plaintiff already amended its complaint of right once.  Despite having that opportunity, it could not assert a proper basis for any of its claims.  This is akin to the type of SLAPP suit the Connecticut legislature recently sought to avoid, to vindicate freedom of speech.[17]  See Conn. Public Act No. 17-71.  Adscend merely wishes to silence truthful reporting that it was defrauding its advertisers.  Such conduct should not be sanctioned; the Amended Complaint should be dismissed with prejudice.

Dated:  April 18, 2018                          Respectfully submitted,

                                                /s/ Jay M. Wolman
                                                Jay M. Wolman, ct29129
                                                RANDAZZA LEGAL GROUP, PLLC
                                                100 Pearl Street, 14th Floor
                                                Hartford, Connecticut 06103
                                                Tel:  (702) 420-2001
                                                Fax:  (305) 437-7662
                                                jmw@randazza.com

                                                Richard B. Newman, *pro hac vice*
                                                Hinch Newman LLP
                                                40 Wall Street, 35th Floor
                                                New York, NY 10005
                                                Tel:  (212) 756-8777
                                                Fax: (866) 449-4897
                                                rnewman@hinchnewman.com

                                                *Attorneys for Defendants*

---

[17]   In the interest of judicial economy, Defendants chose not to file a special motion thereunder, avoiding issues of first impression as to its applicability in diversity jurisdiction cases as well as the particular meaning of legislative language.

Case No. 3:18-cv-00141-MPS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 18th day of April 2018, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Jay M. Wolman
Jay M. Wolman, ct29129
RANDAZZA LEGAL GROUP, PLLC
100 Pearl Street, 14th Floor
Hartford, Connecticut 06103
Tel:  (702) 420-2001
Fax:  (305) 437-7662
jmw@randazza.com

- 20 -